46 F.3d 629
 HEAD START FAMILY EDUCATION PROGRAM, INC., Plaintiff-Appellant,
v.
COOPERATIVE EDUCATIONAL SERVICE AGENCY 11, West Central
Community Action Agency, Inc. and United States Department
of Health and Human Services, Administration for Children
and Families, Region V, Defendants-Appellees.
 No. 94-2515.
 United States Court of Appeals,
Seventh Circuit.
 Argued Oct. 31, 1994.
Decided Jan. 27, 1995.
 
 Edward F. Vlack, III (argued), Greta Mack, Davison & Vlack, River Falls, WI, for Head Start Family Educ. Program, Inc.
 Robert W. Burns (argued), Angela M. Samsa, Godfrey & Kahn, Green Bay, WI, for Cooperative Educational Service Agency 11.
 Francis X. Rivard, Glenwood City, WI, for West Cent. Community Action Agency, Inc.
 Barbara F. Altman, Dept. of Health and Human Services, Region V, Office of Gen. Counsel, Chicago, IL (argued), Richard D. Humphrey, Asst. U.S. Atty., for Department of Health and Human Services.
 Before BAUER, KANNE and ROVNER, Circuit Judges.
 BAUER, Circuit Judge.
 
 
 1
 Plaintiff Head Start Family Education Program, Inc. ("HSFEP"), a Wisconsin nonprofit corporation, filed this suit challenging the award of a grant to defendant Cooperative Educational Service Agency 11 ("CESA 11"), a Wisconsin public agency, by the defendant United States Department of Health and Human Services ("HHS"), Administration for Children and Families ("ACF"), Region V, under a federal Head Start program. The district court granted summary judgment to all defendants, and we affirm.
 
 I.
 
 2
 The Head Start programs are federal programs with the stated purpose of appropriating funds for the delivery of "comprehensive health, educational, nutritional, social, and other services to economically disadvantaged children and their families." 42 U.S.C. Sec. 9831(a). Congress authorized the Secretary of HHS (the "Secretary") to provide financial assistance to an agency designated as a Head Start grantee "for the planning, conduct, administration, and evaluation of a Head Start program." 42 U.S.C. Sec. 9833(a). A Head Start grantee may delegate all or part of its responsibilities for operating a Head Start program to a "delegate agency." 42 U.S.C. Sec. 9837(a); 45 C.F.R. Sec. 1301.2.
 
 
 3
 A Head Start grantee must comply with "standards of organization, management, and administration" prescribed by the Secretary to achieve the objectives of the program. 42 U.S.C. Sec. 9839(a). The Secretary may terminate the funding of a Head Start grantee if the grantee has failed to meet established program requirements. 42 U.S.C. Sec. 9841(a)(3); 45 C.F.R. Secs. 1303.10-11. Upon termination of a grantee, the Secretary may select a new grantee among competing eligible applicants. 42 U.S.C. Sec. 9836(d). The Secretary's authority to select and terminate Head Start grantees in Wisconsin has been delegated to the Assistant Regional Administrator of ACF's Office of Family Supportive Services.
 
 
 4
 From approximately 1967 through August 1992, defendant West Central Community Action Agency, Inc. ("WESTCAP"), a Wisconsin nonprofit corporation, was the designated Head Start grantee in the Wisconsin counties of Barron, Chippewa, Dunn, Pepin, Pierce, Polk, and St. Croix. WESTCAP delegated all of its responsibilities for operating the Head Start program in this region to HSFEP in 1981. Tension developed between WESTCAP and HSFEP in late 1991, and ACF terminated WESTCAP's Head Start grant in August 1992 because WESTCAP and HSFEP were unable to form a written delegate agreement. HSFEP therefore was no longer a delegate agency under the program.
 
 
 5
 ACF began the process of selecting a permanent replacement grantee for the region in November 1992 by preparing a Request for Grant Proposal ("RFGP"), a manual which described the program's requirements and the ACF's procedure for selecting a new grantee in the region. A copy of the RFGP was provided to each applicant. HSFEP, WESTCAP, and CESA 11 applied for the grant. No other applications were received. ACF appointed an independent panel to review and score the applications according to objective criteria set forth in the RFGP. HSFEP received 236 points, WESTCAP received 157 points, and CESA 11 received 223 points. The maximum possible score was 250 points. ACF then eliminated WESTCAP's application from consideration. After further reviewing the remaining applicants, ACF selected CESA 11. CESA 11's grant was effective on July 1, 1993, and has been funded indefinitely.
 
 
 6
 HSFEP then filed this suit under section 702 of the Administrative Procedure Act ("APA"), 5 U.S.C. Secs. 701-06. HSFEP contends that it submitted the only "approvable" application to ACF because the other applications violated the Head Start Act, 42 U.S.C. Sec. 9831 et seq., and HHS regulations. The district court granted the defendants' motion for summary judgment, and HSFEP appeals.II.
 
 
 7
 We reject the defendants' assertion that HSFEP has no standing to challenge the grant award to CESA 11 because HSFEP had no statutory right to be awarded the Head Start grant. Article III of the Constitution requires that the plaintiff has suffered an "injury in fact" which is fairly traceable to the challenged action of the defendant and "likely," as opposed to merely "speculative," to be "redressed by a favorable decision." Lujan v. Defenders of Wildlife, --- U.S. ----, ----, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). Section 702 of the APA, under which HSFEP asserts standing, confers standing to "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. Sec. 702. HSFEP's complaint must also be within "the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." Association of Data Processing Serv. Orgs., Inc. v. Camp, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970). HSFEP contends that it should have been awarded the Head Start grant because it was the only eligible applicant under the Head Start Act and HHS regulations. HSFEP's claim clearly satisfies the requirements of Article III and is also sufficient to confer standing under section 702 of the APA. See National Fed'n of Fed. Employees v. Cheney, 883 F.2d 1038, 1052-53 (D.C.Cir.1989) (a disappointed bidder for a government contract award has standing under Article III and section 702 of the APA.), cert. denied, 496 U.S. 936, 110 S.Ct. 3214, 110 L.Ed.2d 662 (1990).
 
 
 8
 Defendants also contend that judicial review of ACF's selection of CESA 11 is precluded by section 701(a)(2) of the APA, which provides that agency action is not subject to judicial review "to the extent that" the action "is committed to agency discretion by law."[1] 5 U.S.C. Sec. 701(a)(2). The APA embodies a "basic presumption of judicial review," Abbott Laboratories v. Gardner, 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967), and section 701(a)(2) is "a very narrow exception" to this presumption which applies "in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.' " Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971) (citation omitted). Under section 701(a)(2), "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion. In such a case, the statute ('law') can be taken to have 'committed' the decision-making to the agency's judgment absolutely." Heckler v. Chaney, 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985). Section 702(a)(2) applies to those categories of administrative decisions which courts have traditionally regarded as "committed to agency discretion." See Lincoln v. Vigil, --- U.S. ----, ----, 113 S.Ct. 2024, 2031, 124 L.Ed.2d 101 (1993) (collecting cases).
 
 
 9
 Section 701(a)(2) "requires careful examination of the statute on which the claim of agency illegality is based." Webster v. Doe, 486 U.S. 592, 600, 108 S.Ct. 2047, 2052, 100 L.Ed.2d 632 (1988). A review of the statutes and regulations allegedly violated by the selection of an ineligible applicant as a Head Start grantee reveals that there is ample "law to apply" by a reviewing court. Section 9836(a) of title 42 requires that a Head Start grantee designated by the Secretary must have "the power and authority to carry out the purposes of this subchapter and perform the functions set forth in section 9837 of this title within a community." Section 9837, in turn, contains a detailed description of these required powers and functions. Section 9836(d) sets forth nine factors which the Secretary "shall consider" in determining the effectiveness of each applicant to provide Head Start services. Section 9836(g) provides that "[t]he Secretary shall require that the practice of significantly involving parents and area residents affected by the program in selection of Head Start agencies be continued." Section 9838 requires that the chief executive officer of the State be given an opportunity to disapprove the grant award before a grantee is selected by the Secretary. Finally, HHS regulations contain additional selection procedures, program performance standards, and staffing requirements. See 45 C.F.R. Parts 1302, 1304, 1306, and 1308.
 
 
 10
 Our conclusion that judicial review is appropriate is also supported by the nature of HSFEP's claim. HSFEP concedes that the Secretary has discretion to select a Head Start grantee among eligible applicants but contends that the Secretary violated the Head Start Act and its own regulations in concluding that WESTCAP and CESA 11 were eligible applicants. An agency's failure to follow its own regulations has traditionally been recognized as reviewable under the APA.[2] Webster, 486 U.S. at 602 n. 7, 108 S.Ct. at 2053 n. 7 (collecting cases).
 
 III.
 
 11
 Our review of ACF's selection of CESA 11 is limited to whether the agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. Sec. 706(2)(A). This is a narrow standard of review, under which we may not substitute our judgment for that of the agency. Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 2866-67, 77 L.Ed.2d 443 (1983). We must instead determine whether the agency's decision "was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Id. (citation omitted). If the agency has articulated grounds indicating a rational connection between the facts and the agency's action, then our inquiry is at an end. Schneider Nat'l, Inc. v. Interstate Commerce Comm'n, 948 F.2d 338, 343 (7th Cir.1991).
 
 
 12
 HSFEP contends that the selection of CESA 11 was arbitrary and capricious because CESA 11 does not have the authority to carry out the purposes of the Head Start Act and perform the functions set forth in 42 U.S.C. Sec. 9837.[3] See 42 U.S.C. Sec. 9836(a). Specifically, HSFEP asserts that CESA 11 is not authorized under Wisconsin law to enter into financial assistance relationships or to directly accept federal funding, as required by 42 U.S.C. Sec. 9837(a). This argument is not supported by a reasonable reading of Chapter 116 of the Wisconsin statutes.
 
 
 13
 Section 116.015 of the Wisconsin statutes provides that a CESA "may in its name enter into contracts authorized by this chapter and may sue and be sued." HSFEP asserts that this section means that a CESA may only enter into contractual relationships and not "financial assistance relationships" (a term of art under federal law, see 31 U.S.C. Sec. 6304), but the word "only" is nowhere found in the statute. This interpretation is also problematic in light of section 116.03(14), which provides that, in addition to the detailed list of powers set forth in the section, a CESA may "[d]o all other things necessary to carry out this chapter." HSFEP also contends that section 116.03(2) and (3) only authorize a CESA to receive state funds and prohibit a CESA from directly receiving federal funds.[4] Again, nothing in the statute indicates that the grant of authority to CESAs in these subsections is exclusive. Moreover, section 116.03(3), which prohibits a CESA from using federal funds for out-of-state programs, places no restrictions upon the use of federal funds within the state, and thus strongly suggests that a CESA may administer federal funds for in-state programs. Our conclusion that CESA 11 complies with 42 U.S.C. Sec. 9836(a) is further supported by the fact that the Office of the Governor of Wisconsin endorsed CESA 11's application prior to its selection as grantee. See 42 U.S.C. Sec. 9838.
 
 
 14
 HSFEP contends that CESA 11's application was not approvable because it did not demonstrate "financial viability," which is defined as "the capability of an applicant ... to furnish the non-Federal share of the cost of operating an approvable or approved Head Start program." 45 C.F.R. Sec. 1302.2. An HHS regulation requires that "[f]ederal financial assistance granted under the act for a Head Start program shall not exceed 80 percent of the total costs of the program." 45 C.F.R. Sec. 1301.20(a). CESA 11's application indicated that the non-federal funds which CESA 11 would provide were only 16.67 percent of the total costs of the program. This figure was the result of a mathematical error by CESA 11, which was clarified in follow-up discussions between CESA 11 and ACF staff. CESA 11 has at all times met its non-federal share matching requirement as a Head Start grantee. ACF's conclusion that CESA 11 demonstrated "financial viability" was not arbitrary and capricious.
 
 
 15
 HSFEP asserts that CESA 11's application violated three HHS staffing requirements set forth in 45 C.F.R. Part 1306. Section 1306.32(b)(2) requires that Head Start classes must operate for a minimum of three and one-half hours per day. Section 1306.33(a)(2) requires that all children enrolled in a home-based program must receive a minimum of two group socialization activities per month for eight months. Section 1306.33(a)(4) requires that employed staff must have sufficient time "to participate in pre-service training, to plan and set up the program at the start of the year, to close the program at the end of the year, to maintain records, and to keep component and activities plans current and relevant." Assuming, arguendo, that CESA 11's application did not meet these requirements on its face (a point not conceded by ACF, which contends that CESA 11's application was in compliance), ACF's failure to reject CESA 11's application on these grounds was not arbitrary and capricious. William Sullivan, a program manager of ACF's Head Start branch in Wisconsin, submitted an affidavit which declared that ACF staff contacted CESA 11 following submission of its application, and "[a]ll issues were resolved to ACF's satisfaction." CESA 11 has in fact met these staffing requirements while administering the Head Start program.
 
 
 16
 HSFEP objects to the follow-up discussions between ACF staff and CESA 11 after CESA 11 submitted its application. HSFEP asserts that it was unfair for ACF staff to contact CESA 11 to clarify certain issues when its application was facially invalid. See 45 C.F.R. Sec. 1302.1 ("It is intended ... that applicants to administer programs receive fair and equitable consideration."). The regulation which defines an "approvable application," 45 C.F.R. Sec. 1302.2, does not state that an application must comply with the Head Start Act and HHS regulations on its face to be approvable.[5] Neither the Head Start Act nor any HHS regulation prohibits ACF from contacting an applicant to clarify information in the application. Sullivan declared in his affidavit that "minor negotiation or follow-up with the applicant" usually occurs before an application is determined to have met all statutory and regulatory requirements. These follow-up discussions are understandable in light of the intricate requirements of the Head Start Act and HHS regulations. We therefore cannot conclude that the follow-up discussions between ACF staff and CESA 11 deprived HSFEP of a fair selection procedure.
 
 
 17
 HSFEP submits that it should have been selected as grantee because it received the highest score from the independent panel. The members of the panel, however, were not ACF staff. The panel's review of the applications was not mandated by any statute or regulation, and the panel had no authority to accept or reject any application. Its function was merely to score the applications according to objective criteria set forth in the RFGP. After receiving the scores, ACF selected CESA 11 over HSFEP based on several factors which were not apparent on the face of the applications. ACF was concerned that the tension between WESTCAP and HSFEP would affect HSFEP's ability to administer the program. HSFEP had also previously pledged two Head Start school buses as collateral for a loan in violation of 45 C.F.R. Sec. 74.61(c), an HHS regulation.[6] Auditors reviewing WESTCAP grant expenditures had raised additional questions concerning HSFEP's fiscal practices. And, as we stated earlier, the Office of the Governor of Wisconsin had endorsed CESA 11's application. Given the extremely small margin by which HSFEP outscored CESA 11 (remember, HSFEP received 236 points and CESA 11 received 223 points out of a maximum possible score of 250 points), we cannot say that ACF's reliance upon these factors in selecting CESA 11 was arbitrary and capricious.
 
 
 18
 HSFEP's remaining arguments have been waived. HSFEP challenges the district court's grant of summary judgment on the fourth, fifth, and seventh causes of action in its complaint. This argument is raised in a short conclusory paragraph which contains no substantive argument, legal citations, or references to the record. This court has no duty to research and construct legal arguments available to a party. Smith v. Town of Eaton, Indiana, 910 F.2d 1469, 1471 and n. 2 (7th Cir.1990) (collecting cases), cert. denied, 499 U.S. 962, 111 S.Ct. 1587, 113 L.Ed.2d 651 (1991). HSFEP also asserts that summary judgment should not have been granted to the defendants because the administrative record in the district court was incomplete. See Overton Park, 401 U.S. at 419, 91 S.Ct. at 825. This argument was not raised in the district court (HSFEP filed its own motion for summary judgment in the district court) and therefore has been waived. E.g., City of Chicago v. Matchmaker Real Estate Sales Ctr., Inc., 982 F.2d 1086, 1101 (7th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 2961, 125 L.Ed.2d 662 (1993).
 
 
 19
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Section 701(a) of the APA provides in full that "[t]his chapter applies, according to the provisions thereof, except to the extent that--(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. Sec. 701(a)(1). The parties have not addressed, and we do not consider, the applicability of section 701(a)(1). See Air Courier Conference of Am. v. American Postal Workers Union, AFL-CIO, 498 U.S. 517, 523 n. 3, 111 S.Ct. 913, 917 n. 3, 112 L.Ed.2d 1125 (1991) (holding that the judicial review provisions of the APA are not jurisdictional)
 
 
 [2]
 Community Action of Laramie County, Inc. (CALC) v. Bowen, 866 F.2d 347 (10th Cir.1989), upon which ACF relies heavily, is not to the contrary. The court in CALC held that HHS's termination of financial assistance to a Head Start grantee is committed to agency discretion by law under section 701(a)(2) of the APA. CALC, 866 F.2d at 354. The agency action in CALC was a funding decision, which the Supreme Court has described as an "administrative decision traditionally regarded as committed to agency discretion." Lincoln v. Vigil, --- U.S. at ----, 113 S.Ct. at 2031. The court in CALC made clear that a violation of the Head Start Act or HHS regulations by HHS was reviewable under the APA; the plaintiff in CALC simply did not claim that HHS had violated any statute or regulation. CALC, 866 F.2d at 352-53
 
 
 [3]
 CESA 11 is one of several cooperative educational service agencies in Wisconsin established under Chapter 116 of the Wisconsin statutes. The purpose of a CESA is:
 to serve educational needs in all areas of Wisconsin by serving as a link both between school districts and between school districts and the state. Cooperative educational service agencies may provide leadership and coordination services for school districts, including such programs as curriculum development assistance, school district management development, coordination of vocational education and exceptional education, research, special student classes, human growth and development, data collection, processing and dissemination and in-service programs.
 Wis.Stat. Sec. 116.01 (1991-92). Each CESA is governed by a "board of control composed of members of school boards of districts within the agency." Wis.Stat. Sec. 116.02(1)(a) (1991-92).
 
 
 [4]
 Section 116.03(2) and (3) provides in relevant part that the board of control of a CESA shall:
 (2) Receive state aid for the operation of the agency.
 (3) Approve service contracts with school districts, counties, other cooperative educational service agencies, school districts outside the agency ... but the contracts shall not extend beyond 3 years.... No board of control may use federal funds for any program which provides services outside this state without the approval of the state superintendent.
 Wis.Stat. Sec. 116.03(2) and (3) (1991-92).
 
 
 [5]
 Section 1302.2 provides in relevant part:
 Approvable application means an application for a Head Start program, either as an initial application or as an application to amend an approved application governing an on-going Head Start program, which, in addition to showing that the applicant has legal status and financial viability, provides for comprehensive services for children and families and for effective and responsible administration which are in conformity with the Act and applicable regulations, the Head Start Manual and Head Start policies.
 
 
 [45]
 C.F.R. Sec. 1302.2
 
 
 [6]
 This regulation provides in relevant part that "[e]ffective control and accountability shall be maintained for all grant or subgrant cash, real and personal property ... and other assets. Recipients shall adequately safeguard all such property and shall assure that it is used solely for authorized purposes." 45 C.F.R. Sec. 74.61(c)