**SOUTHERN ILLINOIS GRAIN INSPECTION SERVICE, INC., a Missouri Corporation, Plaintiff,**

v.

**UNITED STATES of America, David Galliart, Acting Chief, Federal Grain Inspection Service, Department of Agriculture, and Neil E. Porter, Director Compliance Division, Federal Grain Inspection Service, Department of Agriculture, Defendants,**

and

**Champaign–Danville Grain Inspection Department, Inc., a Corporation, Intervenor–Defendant.**

No. IP 93–1319 C.

United States District Court, S.D. Indiana, Indianapolis Division.

March 17, 1995.

Frederick J. Hess, Lewis Rice & Fingersh, Belleville, Richard A. Ahrens, St. Louis, Richard L. Darst, Mantel Cohen Garelick Reiswerg & Fishmann, Indianapolis, IN, for plaintiff.

Jeffrey L. Hunter, Office of U.S. Atty., Indianapolis, IN, Gary R. Leitz, Hinshaw & Culbertson, Champaign, for defendants.

## ENTRY

BARKER, Chief Judge.

This matter is before the court on the summary judgment motion of defendants United States of America, Neil E. Porter, David Galliart and Champaign–Danville Grain Inspection Department.

### I. FACTUAL BACKGROUND

The facts in this case are largely undisputed. On September 1, 1990, Plaintiff Southern Illinois Grain Inspection Service ("Southern Illinois") was designated by the Federal Grain Inspection Service ("the Inspection Service," or "the Agency") as an official agency for the inspection of grain. The designation included four geographic areas in Indiana and Illinois. Southern Illinois' designation was for a three year period ending September 30, 1993.

On March 31, 1993, the Agency published a notice in the Federal Register declaring that Southern Illinois' designation would terminate on September 30, 1993, and solicited applications from interested parties. Request for Applications, 58 Fed.Reg. 16,810 (1993). The notice required that applications be postmarked or sent by telecopier by April 30, 1993. Intervenor Champaign–Danville Grain Inspection Departments, Inc. ("Champaign") responded to the notice by telefaxing to the Agency a letter stating its intention to apply on April 30, 1993. The Agency received Champaign's completed application for designation on May 10, 1993.

On June 3, 1993, the Agency requested comments regarding the applications filed pursuant to the March 31 notice. Request for Comments, 58 Fed.Reg. 31,491 (1993). The request stated that four inspection services had applied for Southern Illinois' territory, including Champaign and Southern Illinois.

On September 7, Southern Illinois received notice that the Terre Haute portion of its territory would be assigned to Champaign. The rationale for the decision was set out in a report entitled the "Recommendation for Designation in the Southern Illinois Grain Inspection Service, Inc., Geographic Area"

("Recommendation Report"). The Recommendation Report incorporated information contained in a second report generated by the Agency's Office of Inspector General ("OIG") entitled "Chronology of Southern Illinois Grain Inspection Service Acts and Events" ("Chronology"). In concluding that Southern Illinois was "unqualified for designation" in the Terre Haute area, the Recommendation Report referred to eight problem areas that "detracted from the integrity of the official grain inspection system." (Recommendation Report, at p. 17). Despite this unqualified rating for the Terre Haute area, however, the Agency decided that Southern Illinois would continue to service the remainder of its existing geographic area on a one-year interim basis.

On September 29, 1993, Plaintiff filed the present suit seeking *inter alia* to temporarily enjoin the Agency from awarding the Terre Haute region to Champaign. In a hearing held in New Albany, Indiana, on October 5, 1993, this Court denied the requested injunctive relief. On February 22, 1994, Plaintiff petitioned for leave to file an amended complaint, which the Court granted on March 4, 1994. The Amended Complaint alleges that Southern Illinois was denied property without due process of law and injured by arbitrary and capricious agency action. The Defendants now move for summary judgment on both claims and, for the reasons stated below, we grant the motion.

## II. UNITED STATES GRAIN STANDARDS ACT

The Federal Grain Inspection Service was established by the United States Grain Standards Act in 1976. 7 U.S.C. §§ 71 *et seq.* The Act provides for the official inspection and weighing of all grain in accordance with regulations prescribed by the Agency. 7 U.S.C. §§ 77, 79(a); *see generally South Louisiana Grain Services, Inc. v. Bergland,* 590 F.2d 1204 (D.C.Cir.1978); *South Louisiana Grain Services, Inc. v. United States,* 1 Cl.Ct. 281 (1982).

Under the terms of the statute, the Administrator may "designate" persons as an "official agency" for the inspection of grain. In order to be designated, however, that person

must show "to the satisfaction of the Administrator that such agency or person" satisfies several statutory requirements, including:

(1) having adequate facilities and qualified personnel for the performance of official inspection functions;

(2) meeting specific training requirements and personnel standards as set forth in another section of the statute;

(3) assuring compliance with all provisions of the Act;

(4) charging inspection fees that are not discriminatory or unreasonable;

(5) maintaining complete and accurate records of its official activities; and

(6) ensuring that conflicts of interest do not arise between the designated agency and local grain operators.

7 U.S.C. § 79(f)(1)(A). Once these criteria are satisfied, the Administrator must further determine that "the applicant is better able than any other applicant to provide official inspection service." § 79(f)(1)(B).

■ The designation of an official agency "shall terminate at such time as specified by the Administrator but not later than triennially." § 79(g)(1). However, the designation "may be renewed in accordance with the criteria and procedure [sic] prescribed" in § 79(f). *Id.* In other words, the Administrator may renew a designation if the agency satisfies the same criteria required in the initial designation process, including that "the applicant [be] better able than any other applicant to provide official inspection service." § 79(f)(1)(B).

## III. PROCEDURAL DUE PROCESS

### A. Standard of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The movant bears the initial burden of showing that no genuine issue of material fact exists. Once that burden is met, the non-moving party must come forward with

specific facts to rebut that showing. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Hudson Insurance Co. v. City of Chicago Heights,* 48 F.3d 234, 237 (7th Cir.1995).

## B. Lack of a Protectable Property Interest

■ Plaintiffs initially argue that they "had a reasonable expectation of redesignation as the official grain inspection agency for the" Terre Haute service area. (Plaintiff's Memorandum in Opposition, p. 1). As a result, when the Agency decided not to renew their designation, it denied them of property without due process of law. Because we find that Plaintiff does not have a legitimate entitlement to having its designation renewed, we disagree.

■ The threshold requirement for a successful due process claim is the ·deprivation of a liberty or property interest. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); *Downtown Auto Parks, Inc. v. City of Milwaukee,* 938 F.2d 705, 710 (7th Cir.1991). To have a property interest protected by the Due Process Clause,

> a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

408 U.S. at 577, 92 S.Ct. at 2709; *see also O'Hare Truck Service, Inc. v. City of Northlake,* 47 F.3d 883, 885 (7th Cir.1995). In other words, property "is what is securely and durably yours under state [or federal] law, as distinct from what you hold subject to so many conditions as to make your interest meager, transitory, or uncertain." *Reed v. Village of Shorewood,* 704 F.2d 943, 948 (7th Cir.1983).

In some circumstances, a failure to renew a contract or lease can amount to a deprivation of property. For example, in *Reed v. Village of Shorewood,* 704 F.2d 943 (7th Cir. 1983), the Seventh Circuit held that a person had a due process right not to be deprived of the renewal of an Illinois liquor license. Because the requirements for a liquor license, as set by state laws, were so undemanding as

to suggest that "the legislature expected most licenses to be renewed as a matter of course," *Id.* at 948–49, the licensee's expectation of renewal rose to the level of a legitimate entitlement.

In many cases, however, the renewal process is not nearly as automatic. In *Downtown Auto Parks, Inc. v. City of Milwaukee,* 938 F.2d 705 (7th Cir.1991), for example, the court considered whether the City of Milwaukee's refusal to renew a parking lot lease violated the lessee's right to due process. Under Wisconsin law, the City was free to lease the lots to any private person or, if unable to obtain reasonable terms, not to lease the lots at all. As a result, "[s]ince the City had discretion to award the leases to a competitor of plaintiff," the Court held that "plaintiff had no property subject to Fourteenth Amendment protection." *Id.* at 710.

■ In short, to the extent the renewal process appeals to discretion rather than rules, there is no property. *Scott v. Village of Kewaskum,* 786 F.2d 338, 340 (7th Cir. 1986). Rather, the renewal criteria must "contain specific directives to the decision-maker such that if the regulation's 'substantive predicates' are met, a particular outcome necessarily follows" in order to create a protected property interest. *Kim Construction Co., Inc. v. Village of Mundelein,* 14 F.3d 1243, 1247 (7th Cir.1994), *citing Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 463, 109 S.Ct. 1904, 1910, 104 L.Ed.2d 506 (1989); *see also Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983) ("the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State has created a protected liberty interest").

In this case, Plaintiff's expectation of redesignation had many conditions attached to it by statute. The Act conditions the renewal of an agency designation upon the satisfaction of several criteria catalogued in 7 U.S.C. § 79(f)(1)(A). *See* Part II, *supra.* Once these criteria are satisfied, however, no particular outcome is mandated. Rather, the Administrator must then determine that the applicant is better able than any other applicant to perform the required functions.

§ 79(f)(1)(B). This determination is discretionary; no one has an entitlement to be deemed "better able." Moreover, because § 79(g)(1) states that a designation "*may* be renewed," even if sections 79(f)(1)(A) and (B) are satisfied, the renewal of a designation remains discretionary.[1] In light of these provisions, we cannot say that the statute contemplates that agency designations are "renewed as a matter of course." *Reed,* 704 F.2d at 948–49. Nor is the Administrator's discretion substantively limited by statutory predicates that mandate a particular outcome. Thus, Plaintiff's expectation of renewal is subject to so many conditions as to make its interest "meager, transitory, or uncertain." *Reed,* 704 F.2d at 948.

Although the statute does not create a protectable property interest, Plaintiff points to an alleged Agency practice which, it contends, "rises to the level of an informal administrative rule, bestowing upon it a property interest" subject to due process protection. *O'Hare Truck Service, Inc. v. City of Northlake,* 47 F.3d 883, 886 (7th Cir.1995). Specifically, Plaintiff quotes language in the Recommendation Report which states: "*With all other factors equal,* existing official agencies have been given priority over proposed new agencies." (Recommendation Report, at p. 16) (emphasis in original). According to Plaintiff, this informal policy substantively limits the Agency's discretion: "if the existing applicant is qualified for renewal, the administrator does not address the question whether a competing applicant is better qualified." (Plaintiff's Memorandum in Opposition, p. 4).

There are several problems with this reasoning. First, the Agency did not find Southern Illinois qualified to service the Terre Haute area.[2] Thus, even if the quoted statement represents an informal administrative rule, it fails to show that plaintiff had a legitimate expectation in being redesignated. Moreover, the statement gives priority to "existing official agencies." As the next sentence in the report explains, however,

> there were three existing official agencies, Champaign, Missouri, and Southern Illinois, that had applied, [and] those three official agencies ... receive[ed] consideration for designation based on adequacy of applicant plans and established history.

(Recommendation Report, at p. 16). In other words, all existing agencies—wherever located—were considered before applicants which were not already official agencies. Since both Plaintiff and Champaign were existing agencies, one was not entitled to priority over the other on the basis of this policy alone.[3]

 Finally, in order to create a constitutionally protected property interest, the internal regulation must have "binding force," *Hohmeier v. Leyden Community High Sch. Dist. 212,* 954 F.2d 461, 465 (7th Cir.1992), or "the force of law." *O'Hare,* 47 F.3d at 886. That is to say, the regulation must contain "explicitly mandatory language, *i.e.* specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow." *Thompson,* 490 U.S. at 463, 109 S.Ct. at 1910 (internal quotation marks omitted).

 In this case, however, the alleged policy simply states that existing official agencies "*have been given*" priority. This statement does not say that the Agency *must* give priority every time. Nor does it say that the Agency *shall* give priority to existing official agencies in the future. Thus, the so-called policy simply lacks the mandatory language

---

**1.** Indeed, defendant Neil Porter, Director of the Agency's compliance division, states in an affidavit that even if there had been no other applicants, Southern Illinois would not have been redesignated for the Terre Haute area. (Porter Aff., at ¶ 7).

**2.** According to the Recommendation Report:
We believe that the results of this investigation have shown that Southern Illinois is unqualified for designation in the general Terre Haute, Indiana, area.

Recommendation Report, at p. 17.

**3.** *See also* Second Affidavit of Neil E. Porter, at ¶ 2 (stating that policy in question "means that as between any and all applicants who have not been designated as a grain inspection agency under the statute ('proposed new agencies'), and any and all agencies that are so designated at the time of the application (the 'existing official agencies'), all those agencies that are so designated at the time of the application are considered first").

necessary to confer a protectable property interest in redesignation. Accordingly, Defendants are entitled to summary judgment on Plaintiff's procedural due process claims.

## IV. ADMINISTRATIVE PROCEDURE ACT REVIEW OF THE AGENCY'S ACTION

We are next asked to reexamine the merits of the Agency's decision not to renew Plaintiff's designation. The Plaintiff maintains that: (1) the Inspection Service's decision to deny redesignation was arbitrary and capricious, and (2) the Agency violated its own regulations by accepting applications after the April 30, 1993, deadline.

### A. Standard of Review

■ Both parties agree that the Court's Review of the Agency's designation of Champaign is limited to whether that decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This is a narrow standard of review, *Schneider National, Inc. v. Interstate Commerce Comm'n*, 948 F.2d 338, 343 (7th Cir.1991), under which the Court may not substitute its judgment for that of the agency. *Head Start Family Education Program, Inc. v. Cooperative Educational Service Agency 11*, 46 F.3d 629, 632–33 (7th Cir.1995). Instead, we must determine whether the agency's decision "was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* If the agency has articulated grounds indicating a rational connection between the facts and the agency's action, then the Court's inquiry is at an end. *Id.*; *Schneider*, 948 F.2d at 343.

### B. Decision to Deny Redesignation

Initially, we review the Administrator's decision finding that Plaintiff was not qualified for redesignation in the Terre Haute area. The rationale behind that determination is set forth in the Recommendation Report, which identifies numerous "problems that de-tracted from the integrity of the official grain inspection system," including:

(1) the altering of official samples;

(2) the issuing of official grades on samples that were not graded;

(3) the performance of various technical functions by unlicensed personnel without proper supervision;

(4) tampering with grain inspection monitoring samples by a licensed inspector; and

(5) obtaining more than one original sample using different sampling methods on the same grain lot.

(Recommendation Report, at p. 17). Moreover, during the preceding fiscal year, the Peoria field office issued two corrective actions to Southern Illinois concerning wheat damage and odor. *Id.* at 14. Champaign, by contrast, received no corrective actions. *Id.* at 16.

■ We have little difficulty in concluding that the Administrator did not act arbitrarily and capriciously in not renewing Southern Illinois' designation. The factors considered by the Agency are relevant to the designation process as outlined by sections 79(f)(1)(A) and (B) of the United States Grain Standards Act. Indeed, many of the problems referred to in the Recommendation Report are specifically prohibited by the Act. *See, e.g.,* 7 U.S.C. § 87b (listing acts prohibited by the statute). Moreover, there is a rational connection between these "severe problems that detracted from the integrity of the official grain inspection system" and the Agency's finding that Southern Illinois is "unqualified for designation in the general Terre Haute" service area.[4] *Id.* at 14. Thus, because the Agency looked at relevant factors and there is a rational connection between those factors and the finding that Southern Illinois is unqualified, we cannot say that the Administrator's actions were arbitrary and capricious.

---

4. Because the investigation looked only at the Terre Haute service area, the Agency allowed Plaintiff to service the remainder of its area on a one-year interim basis in order to ascertain the adequacy of its performance. Thus, we cannot say that the Agency acted arbitrarily by presuming that the problems referred to in the Terre Haute area were symptomatic of problems occurring in Plaintiff's remaining areas.

■ In response, Plaintiff argues that it was denied information concerning (1) the nature of the charges leading to the finding of disqualification, (2) the identities of the witnesses making charges against it, (3) the opportunity to rebut those charges, and (4) the opportunity to present evidence favorable to it. (Plaintiff's Memorandum in Opposition, at p. 24). Because it was not afforded these quasi-judicial procedural safeguards, Plaintiff contends that the Agency's decision was arbitrary and capricious.

■ The problem with this argument is that Plaintiff identifies the Due Process Clause as the source of these purported procedural rights. As we discussed above, however, Plaintiff's desire to be redesignated is not a property interest protected by due process. Where there are no property rights, no particular procedures are required. *Carson v. Block,* 790 F.2d 562, 566 (7th Cir. 1986) ("the due process clause of its own force requires particular procedures only when the decision 'deprives' a person of 'life, liberty, or property' "). Thus, Plaintiff's contention that "in an informal decision making setting like this one, due process requires that a party who is to be deprived of property be informed of the allegations against it and a meaningful opportunity to rebut those allegations" is simply unavailing. (Plaintiff's Memorandum in Opposition, at p. 23).

### C. Agency's Acceptance of "Late" Application

Finally, Southern Illinois alleges that the Agency violated its own regulations by accepting Champaign's untimely application. The regulations state that "[a]n application for designation should be filed with the service, according to the provisions of the FEDERAL REGISTER notice." 7 C.F.R. § 800.196(d). The notice, in turn, required that applications for Southern Illinois' territory "be postmarked or sent by telecopier

(FAX) on or before April 30, 1993." 58 Fed.Reg. 16,810 (1993).

In this case, Champaign Faxed a brief letter to the Agency on April 30, 1993, stating its intention to apply for Plaintiff's territory and requesting an official application.[5] Agency regulations, however, require *inter alia* that an application for designation be submitted on a form furnished by the Agency and be accompanied by documents which show all information requested on the form. 7 C.F.R. § 800.196(d). Champaign filed a completed application with the Agency on May 10, 1993. Thus, because Champaign did not file a completed application until after the deadline, Plaintiff contends that the application was untimely. We again disagree.

■ It is axiomatic that this Court must defer to an agency's interpretation of its regulations if the interpretation is reasonable. *Martin v. Occupational Safety & Health Review Comm'n,* 499 U.S. 144, 150, 111 S.Ct. 1171, 1175–76, 113 L.Ed.2d 117 (1991); *Chicago School of Automatic Transmissions, Inc. v. Accreditation Alliance of Career Schools,* 44 F.3d 447 (7th Cir.1994); *Kelley v. University of Illinois,* 35 F.3d 265, 271 (7th Cir.1994). In this case, Neil Porter—the Agency's Compliance Division Director—testified that the Agency's practice is to consider letters of intent as applications for designation, even when they do not fully comply with the requirements of § 800.196(d). According to Mr. Porter:

[A]s long as [we] have received some indication from the interested applicant that they are going to apply, and it's postmarked prior to the application period, we consider that an application, and if there is other information that we need afterwards we will go back and solicit the other information.

(Transcript of New Albany Hearing, at p. 69). Moreover, this policy is a reasonable

---

**5.** That letter stated in pertinent part:

I request that an application for designation to the area currently assigned to the Southern Illinois Grain Inspection Service be forwarded to me for completion and submission for consideration to become designated to service a portion of the territory currently [sic] to [Southern Illinois]. . . .

Finally, I wish that at this time, this application be considered for assignment of territory only if Southern Illinois is found not qualified for redisgnated [sic] by the [Agency]. . . .
Letter of Application, Appendix, Attach. 4.

interpretation of 7 C.F.R. § 800.196(e), which provides:

> If an application is not in compliance, the applicant *shall* be provided an opportunity to submit the needed information. If the needed information is not submitted within a reasonable time, as determined by the Service, the application may be dismissed.

(Emphasis added). In short, agency regulations permit applicants to submit something less than a final, fully completed application. Indeed, the Agency is *required* to give applicants a reasonable amount of time to supplement their incomplete applications. As a result, we find that the Agency's acceptance of Champaign's letter of intent as an application for purposes of complying with the April 30, 1993, deadline is neither arbitrary nor capricious.[6]

## V. CONCLUSION

The Court finds (1) that Plaintiff did not have a protectable property interest in being redesignated as an official grain inspection agency, (2) that the Agency has articulated a rational connection between the facts and its decision not to redesignate Plaintiff, and (3) that the Agency's decision to accept Champaign's letter of intent as an application for purposes of complying with the April 30, 1993, deadline is a reasonable interpretation of statutory and regulatory guidelines. Accordingly, we GRANT defendants' motion for summary judgement.

It is so ORDERED.

## JUDGMENT

In accord with the Court's entry in the above named cause, the summary judgment motion of defendants United States of America, David Galliart and Neil E. Porter and intervenor-defendant Champaign–Danville Grain Inspection Department is granted. Judgment is entered in favor of the Defendants and against the Plaintiff on all of Plaintiff's claims. This matter is hereby dis-

missed with prejudice. Each of the parties is to bear its respective costs in this case.

It is so ORDERED.

---

6. Because Agency regulations allow for the acceptance of an incomplete application, we must also deny Plaintiff's claim that the Agency violated due process by not following its own regulations.