**Randall F. CARSON and Susan Carson, Plaintiffs-Appellees,**

v.

**John R. BLOCK, individually and as former Secretary of Agriculture, et al., Defendants-Appellants.**

No. 85–2858.

United States Court of Appeals, Seventh Circuit.

April 18, 1986.

Decided May 19, 1986.

Rehearing and Rehearing En Banc Denied June 24, 1986.

James A. Lewis, Asst. U.S. Atty., Gerald D. Fines, U.S. Atty., Springfield, Ill., for defendants-appellants.

John H. Bisbee, Kent F. Slater, Lucie, Heiser & Slater, Macomb, Ill., for plaintiffs-appellees.

Before CUMMINGS, Chief Judge, EASTERBROOK, Circuit Judge, and NOLAND, District Judge.[*]

EASTERBROOK, Circuit Judge.

Randall and Susan Carson bought a farm in 1977. In 1978 the Farmers Home Administration, a division of the Department of Agriculture, loaned the Carsons some money. The FmHA made more loans later. The ten loans come to $375,000. In 1979 the Carsons became delinquent in repayment, and the FmHA accommodated them by a combination of forbearance and further loans. When the Carsons asked in December 1981 for permission to defer repayments, the County Supervisor of FmHA said no. The Carsons did not seek administrative review; instead they invoked the protection of the bankruptcy laws, and the bankruptcy court ordered the farm sold at an auction. The FmHA emerged as the buyer, and the Carsons later became the FmHA's tenants. The Carsons submitted an application for a new loan, in order to repurchase the farm, in December 1982. The county loan committee of the FmHA turned them down; the state director of the FmHA sustained this decision.

The Carsons want $6 million for their trouble, and they think former Secretary of Agriculture Block and seven other officials of the Department should chip in. They maintain that these eight officials are personally liable because the Department did not implement the payment-deferral program authorized by 7 U.S.C. § 1981a until compelled to do so by several courts, including this one. See *United States v. Markgraf,* 736 F.2d 1179, 1182–84 (7th Cir. 1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1154, 84 L.Ed.2d 308 (1985). Had the De-

---

[*] The Honorable James E. Noland, Chief Judge of the United States District Court for the Southern District of Indiana, is sitting by designation.

partment implemented the program, the Carsons insist, they could have kept their farm. They assert that the first, fourth, and fifth amendments to the constitution entitle them to monetary relief from the eight officials, relying on *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). They also seek an injunction compelling the government to implement the deferral program and restore their farm.

The eight officials moved for summary judgment, to the extent the complaint sought damages from them personally, on the basis of absolute and qualified immunity. The district court denied the motion without stating reasons; a brief docket entry is its only trace. The officials immediately appealed, as *Mitchell v. Forsyth*, —— U.S. ——, 105 S.Ct. 2806, 2815–17, 86 L.Ed.2d 411 (1985), and *Nixon v. Fitzgerald*, 457 U.S. 731, 742–43, 102 S.Ct. 2690, 2697–98, 73 L.Ed.2d 349 (1982), allow. See also *Lojuk v. Johnson*, 770 F.2d 619, 621 & n. 2 (7th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 822, 88 L.Ed.2d 795 (1986). It does not matter that the district court's decision appears as a docket entry rather than a separate judgment under Fed.R. Civ.P. 58. *Mitchell* and *Nixon* allow appeals under the "collateral order" doctrine, and the essence of a "collateral" order is the absence of a final judgment on a separate document.

The genesis of the Carsons' complaint is the Department's failure to implement § 1981a before it was too late. No statute requires a federal official to pay damages for inept administration of the law, let alone for adopting a construction of a law different from the one later selected by a court. The Carsons do not argue that § 1981a establishes an implied private right of action for damages, and no court has held that it does. The Carsons therefore cannot get damages just because the defendants misunderstood § 1981a, and to this extent the case does not involve immunity of any sort. Cf. *Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 3020 n. 12, 82 L.Ed.2d 139 (1984) (violation of a statute dissipates immunity only if the statute also supports the claim for relief on the merits).

Error in the implementation of § 1981a may produce recovery only as a tort—either a "constitutional tort" under *Bivens* or a tort under the common law of Illinois. We assume for the sake of argument that the defendants' failure to implement § 1981a might be deemed a tort, although it is difficult to see what kind.

Many cases say that federal officials have absolute immunity from liability for common law torts committed in the line of duty. See *Butz v. Economou*, 438 U.S. 478, 487–95, 98 S.Ct. 2894, 2900–05, 57 L.Ed.2d 895 (1978); *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); *Spalding v. Vilas*, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780 (1896). Almost anything a federal official does has the potential to injure people—sometimes large numbers of people. Unless the officials were immune from liability for acts committed in the line of duty, they would spend inordinate amounts of time in court defending themselves. The fear of liability (coupled with the costs of the legal process and the fear of legal error) may make officials too cautious in addition to distracting them. Private firms may buy insurance for their employees, or give them bonuses or shares of the enterprise to induce them to take risks. The United States does not offer the Secretary of Agriculture a "share of the profits" from federal programs awarding subsidies, and a system under which officials face risks of substantial liability for error without any corresponding prospect of reward for good work is doomed. Only the addled and the foolhardy would disregard these incentives, and the addled and foolhardy do not execute statutes very well. *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir.1949), *cert. denied*, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950). See also Ronald A. Cass, *Damage Suits Against Public Officers*, 129 U.Pa.L.Rev. 1110, 1135–59 (1981).

■ Most of the Court's cases deal with absolute immunity from tort liability. They hold that officials have immunity against damages for losses caused by acts within the duties of their office. This way of stating the scope of immunity might suggest that losses caused by violations of

statutes should be treated differently. The statute specifies the duties of the office, and it seems to follow that a violation of the statute cannot be within the duties of the office, and so there can be no immunity. It is not paradoxical, however, that an official can violate a statute as part of his duty of faithful execution. The scope of the immunity—acts in the line of duty—refers to the sort of activity that is immunized. The defendants injured the Carsons by acting on an application for deferral, in the scope of the normal activities of their jobs, rather than (say) by shooting them. An official acts in the line of duty when "the occasion ... would have justified the act, had he been using his power for any of the purposes on whose account it was vested in him." *Gregoire v. Biddle*, 177 F.2d at 581. That the officials may have denied the application wrongly is irrelevant. An agency has the power to construe the statute as part of the power to execute it. That construction is within the line of duty and covered by absolute immunity. *Henderson v. Lopez*, 790 F.2d 44, (7th Cir.1986); *Mother Goose Nursery Schools, Inc. v. Sendak*, 770 F.2d 668 (7th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 884, 88 L.Ed.2d 919 (1986).

If this case entails only a violation of law, the defendants have absolute immunity under *Barr* and *Spalding*. The Supreme Court has struck the balance differently for most "constitutional torts." See *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Carsons insist that the defendants violated the constitution and not just a statute, so that they need only overcome the qualified immunity defined in *Harlow* and our opinion in *Lojuk*.

The difference between a violation of the constitution and a violation of a statute is obscure, because the constitution commands obedience to statutes. Article II, sec. 3 requires the President to "take Care that the Laws be faithfully executed", and the Carsons say that this turns the Department's misinterpretation of § 1981a into a violation of the constitution. This analysis obliterates all differences between constitution and laws, however, and it overlooks the source of the Supreme Court's decision not to apply absolute immunity to constitutional cases. Absolute immunity, if combined with a will to disobey, may weaken the substantive command. This usually does not do serious damage, because Congress may either override or create immunity no matter what the Court does. The obligation is within the control of the political branches, and these branches therefore are entitled to select the remedies for wrongdoing. *Martinez v. California*, 444 U.S. 277, 280–83, 100 S.Ct. 553, 556–58, 62 L.Ed.2d 481 (1980). Absolute immunity is the Court's standby guess about what these branches would pick, were they to speak. The political branches also have little incentive to afford inadequate remedies for torts and violations of positive law. The political constituency that led to these rules also demands enforcement of them. Things are otherwise when the source of the substantive rule is the constitution. The political branches may not alter constitutional rules, and some rules were written into the fundamental law out of concern that the political branches would alter them if they could. To afford absolute immunity as a general rule for violations of the constitution would be to achieve by indirection a result that is foreclosed.

The source of the substantive obligation—and not the label that is attached to the obligation—controls the immunity available to wrongdoers. The obligation to consider requests for deferral of repayment of loans comes from a statute, and therefore the officials are entitled to absolute immunity. This approach draws support from some other interactions between statutes and the constitution. For example, the supremacy clause of Art. VI requires states to respect federal statutes. The Supreme Court has held, however, that claims invoking the Supremacy Clause do not arise under the constitution. They arise only under the statute that supplies the rule of decision. *Swift & Co. v. Wickham*, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965). Similarly, a federal court will not require a state to follow its own law, even though adherence to governing rules is an important ingredient of both due pro-

cess and equal protection under the fourteenth amendment. See *Muckway v. Craft*, 789 F.2d 517 (7th Cir.1986); *Stern v. Tarrant County Hospital District*, 778 F.2d 1052 (5th Cir.1985) (en banc); cf. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

So much for the argument that any violation of § 1981a is a violation of the constitution. The Carsons also advance two more traditional claims. One, invoking the first amendment, is that officials of the Department retaliated against the Carsons for their speech. In November 1982 the FmHA scheduled a public auction at which it planned to sell the chattels the Carsons left at their farm when the FmHA took it over. The Carsons' brief states: "On the day of the sale, friends and neighbors of the Carsons and the Carsons, in a protest against what they felt had been the FmHA's improper failure to consider the [Carsons] for loan payment deferral treatment, protested and succeeded in 'shouting down' the auction sale." In retaliation for this, according to the complaint, local officials of the FmHA "embark[ed] upon a campaign to thoroughly discredit and harm Plaintiffs in the eyes of their friends and supporters by disseminating information to various of the media ... that Plaintiffs were poor managers of their farming operation; that Plaintiffs had 'abandoned' their farm and left their cattle to starve; and that Plaintiffs had improperly accounted for or converted secured property belonging to the FmHA, when, in fact, all such statements were absolutely and palpably false ..."

■ This allegation of slander does not change the nature of the immunity. Libel and slander are not violations of the constitution. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Some of the most famous cases establishing absolute immunity involved malicious libel. See *Barr, Spalding,* and *Howard v. Lyons*, 360 U.S. 593, 79 S.Ct. 1331, 3 L.Ed.2d 1454 (1959). The immunity is absolute no matter the motive for the slander—preventing an inquiry into motive is one of the principal reasons for making the immunity *abso-*

*lute.* Ours is not, however, the hard case of slander in response to constitutionally protected speech. "Shouting down" an auction is noise, not speech. The Carsons' "protest" was functionally the same as making an unbearable din with airhorns or throwing a stink bomb into the crowd. "Shouting down" another speaker is the antithesis of speech. The first amendment does not protect loud noises that prevent others from speaking or hearing. *Kovacs v. Cooper*, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949).

■ The remaining claim is that the failure to implement § 1981a violated the due process clause of the fifth amendment. Here is the argument: the statute entitles applicants to apply for deferrals of repayments; those who apply have a statutory right to be heard; the due process clause covers hearings; therefore the refusal to implement the statute was a refusal to hold hearings, in violation of the due process clause. There are several problems, each fatal. First, the failure to implement the statute at all was a legislative-type decision for which no individual hearing was necessary, see *Atkins v. Parker*, —— U.S. ——, 105 S.Ct. 2520, 86 L.Ed.2d 81 (1985); *BiMetallic Investment Co. v. State Board of Equalization*, 239 U.S. 441, 36 S.Ct. 141, 60 L.Ed. 372 (1915). Once the Department made this class-wide decision, it did not need to give the Carsons a further hearing. Second, the fact that the statute affords some process does not mean that the due process clause requires the government to carry out the statute. See *Olim v. Wakinekona*, 461 U.S. 238, 248–51, 103 S.Ct. 1741, 1746–48, 75 L.Ed.2d 813 (1983). Third, the due process clause of its own force requires particular procedures only when the decision "deprives" a person of "life, liberty, or property". Only property could be at issue here, and an interest is "property" only if there is an entitlement that stands or falls on the application of rules to facts. "To the extent a request appeals to discretion rather than to rules, there is no property." *Scott v. Village of Kewaskum*, 786 F.2d 338, 340 (7th Cir. 1986). The loan deferral program under § 1981a gives the FmHA discretion. We

established in *United States v. Markgraf,* 736 F.2d at 1185, that no one is entitled to deferral. The appeal is to discretion rather than to rules. The program therefore does not create a "property" interest. Regulations implementing the program might do so, see *Hewitt v. Helms,* 459 U.S. 460, 469–72, 103 S.Ct. 864, 870–71, 74 L.Ed.2d 675 (1983), but the Carsons complain of the absence of regulations and therefore have no entitlements of this sort.

■ All that is left is the Carsons' argument that the defendants should have implemented the repayment deferral program sooner than they did. This depends wholly on the statute. The defendants are absolutely immune from liability in damages for claims of this sort. The district court therefore should have granted the motion for summary judgment and dismissed all claims against the defendants in their individual capacities.

REVERSED.