RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0108P (6th Cir.)
File Name: 03a0108p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

DAN BOWERS, et al.,
     *Plaintiffs-Appellants,*

     *v.*          No. 01-1453

THE CITY OF FLINT,
     *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 00-71473—John Corbett O'Meara, District Judge.

Argued: December 12, 2002

Decided and Filed: April 9, 2003

Before: BATCHELDER and MOORE, Circuit Judges;
FORESTER, Chief District Judge.*

_____

**COUNSEL**

**ARGUED:** Tom R. Pabst, Flint, Michigan, for Appellants. Christopher J. Pianto, FLETCHER, WOLF & ASSOCIATES, Flint, Michigan, for Appellee. **ON BRIEF:** Tom R. Pabst,

---

\* The Honorable Karl S. Forester, Chief United States District Judge for the Eastern District of Kentucky, sitting by designation.

Michael A. Kowalko, Flint, Michigan, for Appellants. Christopher J. Pianto, Loyst Fletcher, Jr., FLETCHER, WOLF & ASSOCIATES, Flint, Michigan, for Appellee.

BATCHELDER, J., delivered the opinion of the court, in which FORESTER, D. J., joined. MOORE, J. (pp. 11-17), delivered a separate concurring opinion.

_____

**OPINION**

_____

ALICE M. BATCHELDER, Circuit Judge. Plaintiffs, users of the City of Flint's water and sewer system, appeal the district court's order granting summary judgment to the defendant in this action claiming that the defendant violated their procedural and substantive due process rights by failing to implement a city ordinance giving a five percent discount to residential water users who pay their water bills on time. Because the plaintiffs' procedural due process claim is either not ripe for adjudication or meritless, and because Flint's failure to implement the five percent discount on its water bills is outside of the purview of substantive due process doctrine, we affirm the judgment of the district court.

I

On June 13, 1994, the City Council of Flint, Michigan, passed an ordinance intended to encourage local water users to pay their water bills in a timely fashion. The ordinance, Flint Ord. § 46-52.2, provides a five percent discount to residential users who pay their water bills prior to the due date, and directs that the city's water bills shall, "as soon as practicable," reflect the discount.[1] The five percent discount

---

[1] In its entirety, the ordinance reads as follows:
§ 46-52.2   **WHEN BILLS DUE; DISCOUNT; PENALTY.**
    (a) Bills shall be rendered approximately 15 days prior to the due date thereof. As to commercial and industrial accounts, if water charges are

has still not gone into effect, purportedly because the City's billing system is not sophisticated enough to handle the processing required to date the receivables and grant the discount to qualified bill payers.[2]

A group of Flint citizens filed a complaint in Michigan state court on March 13, 2000, alleging violations of "federal due process" and "federal procedural due process" under the Fourteenth Amendment,[3] as well as violations of Michigan constitutional, statutory, and common law, for Flint's continuing failure to give its residential water users the promised five percent discount for individuals who pay their water bills on time. The plaintiffs seek damages, a declaration of their rights under applicable law, an accounting for all monies held by the City of Flint "which Defendant

---

not paid on or before the due date thereof, then a penalty of 5% shall be added thereto.

(b) Anything in the code of the City of Flint, specifically this chapter, to the contrary notwithstanding, any residential user of water and sewer services shall be entitled to, and shall receive, a five percent (5%) reduction in the amount of the bill if the bill is paid in full, as defined in division (c) of this section, prior to the due date as set forth on said bill.

(c) *PAID IN FULL.* Receipt of a check or cash by the City Treasurer's Office on or before the day prior to the due date. It is the intent hereof that payment be actually received by the Treasurer or the Treasurer's authorized representative and the date of mailing or postmark shall not be relevant. If a user pays by a check with [sic] is subsequently dishonored, the discount shall not be granted.

(d) Water and sewer bills shall, as soon as practicable set forth the discounted amount and the last day to take advantage of the discount on the face of the statement.

[2]At oral argument, counsel for the City of Flint indicated that the city had hired a vendor to update its computer system so as to make implementation of the five percent discount practicable. The vendor, however, failed to perform and was sued by Flint in a case that, at the time of oral argument, was ongoing.

[3]The plaintiffs bring their federal law claims pursuant to 42 U.S.C. § 1983.

knew for a fact it was not entitled to take or keep," and an injunction ordering the City to abide by its own ordinance.

The City of Flint removed the case to the Eastern District of Michigan based upon the federal court's jurisdiction over the federal claims, and the district court remanded to state court the claims based upon Michigan law, leaving in federal court only the due process claims brought under 42 U.S.C. § 1983.[4] The City moved for summary judgment, and on February 23, 2001, the district court, ruling from the bench, granted the motion. Citing *Hung Bu Chun v. New York City Department of Environmental Protection*, 989 F. Supp. 494 (S.D.N.Y. 1998), the court held that the deprivation of rights alleged by the plaintiffs is not a violation of due process because the state provides a meaningful postdeprivation remedy, and the plaintiff's interest in an accurate water bill is not a fundamental right for purposes of substantive due process.

The plaintiffs appealed, arguing that they have a property interest in the five percent discount and that interest qualifies for due process protection; their due process rights were violated by the City's "arbitrary and capricious conduct;" the city ordinance is not ambiguous, and if it were, then the federal district court should have abstained from ruling on it; and their takings and procedural due process claims are valid.

While this appeal was pending, the state trial court granted the plaintiffs' summary disposition motion with respect to their contract law claim, holding that the plaintiffs did have a contractual right to the five percent discount. The state court also denied the defendant's motion with respect to the equitable claims alleging arbitrary and capricious conduct and granted defendant's motion to dismiss plaintiffs' conversion

---

[4]Plaintiffs' brief also refers to a federal takings claim. Bowers Br. at 1. However, because the plaintiffs' complaint alleges only two federal counts, both involving violations of the due process clause, we need not address the takings issue.

claim, public policy claim, and Michigan "due process" and "procedural due process" claims.

## II

We review de novo the district court's grant of summary judgment, employing the same Rule 56(c) standard used by the district court. We examine the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" in order to determine if there is a "genuine issue as to any material fact" and whether the moving party "is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Mansfield Apartment Owners Ass'n v. City of Mansfield*, 988 F.2d 1469, 1473 (6th Cir. 1993). We view the evidence and any inferences that may be drawn therefrom in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Though the plaintiffs expended little effort, either in their brief or at oral argument, attempting to state a coherent argument that their procedural due process rights have been violated, the issue is nonetheless before us. The City of Flint points to its established process for disputing water bills as evidence that it offers an adequate procedural remedy—a remedy that the plaintiffs never pursued. A consumer wishing to contest a water bill "which he feels to be unusually large" is entitled to apply for a hearing, investigation, and determination of whether the bill is too high. Flint Ord. § 46-17. The plaintiffs' response to the City's charge that they should have pursued their administrative remedies is that such a pursuit would have been futile because the "City's position in this very litigation has been, still is, and will be until its last gasp, that the law/ordinance made the subject matter of this lawsuit absolutely does not grant a 5% entitlement and/or refund to any of the families." Bowers Brief at 29.[5]  Before

---

[5] At oral argument, in response to being asked whether the plaintiffs could get a fair hearing on their claims pursuant to the local procedures established to contest water bills, the plaintiffs' attorney Tom Pabst

we can reach the merits of the plaintiffs' procedural due process claim, we must determine whether it is properly before the Court at this time.

We begin by noting the distinction between exhaustion and finality. Exhaustion, the Supreme Court has held, "generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate," and is not required before a plaintiff may bring a suit predicated upon 42 U.S.C. § 1983. *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 193 (1985). Finality, on the other hand, "is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury . . . ." *Id.*

Whether finality is required in any given case depends upon the type of harm alleged: "If the injury the [plaintiffs] seek to redress is harm to their property amounting to a 'deprivation' in constitutional terms, a final judgment is required; however, if the injury is the infirmity of the process, neither a final judgment nor exhaustion is required." *Hammond v. Baldwin*, 866 F.2d 172, 176 (6th Cir. 1989). In other words, a due process challenge brought under § 1983 to an allegedly unconstitutional procedure is not subject to a finality requirement, while a claim alleging harm or deprivation of property "is substantive and, so, a final judgment (but not exhaustion) is required." *Id.*; *see also Macene v. MJW, Inc.*, 951 F.2d 700, 704 (6th Cir. 1991) ("In order to make a § 1983 claim for a taking without just compensation, a plaintiff must have attempted to obtain compensation through established state procedures. This is not technically an exhaustion requirement but is a product of the ripeness doctrine.").

---

replied, "It doesn't matter whether they get a fair hearing or not. . . . And [the City of Flint] claim[s] there is such a hearing—an inverse condemnation action—I say there's not. In any event, isn't it clear that the City has come to the defendant's position that they don't owe any refund?"

Ordinarily, "the plaintiff has the burden of pleading and proving that state damage remedies are inadequate to redress the alleged wrong before he can resort to a damages action for a deprivation of procedural due process under 42 U.S.C. § 1983." *Sproul v. City of Wooster*, 840 F.2d 1267, 1270 (6th Cir. 1988); *see also McLaughlin v. Weathers*, 170 F.3d 577, 580 (6th Cir. 1999) ("Even if the statute was not facially constitutional, we would require [plaintiff] to prove the absence of adequate state remedies . . . ."); *Nat'l Communications Sys., Inc. v. Mich. Pub. Serv. Comm'n*, 789 F.2d 370, 372 (6th Cir. 1986) ("[I]n section 1983 damage suits for deprivation of property without procedural due process the plaintiff has the burden of pleading and proving the inadequacy of state processes . . . .") (citation omitted).

In the case before us, it is unclear whether plaintiffs are challenging the City's procedures for contesting water bills (a challenge not requiring finality), or alleging a deprivation of property rights without due process (requiring finality), or both. It is clear, nonetheless, that they cannot prevail on their procedural due process claim under either legal theory. The substance of plaintiffs' claim that their property interest in the five percent discount was taken in violation of procedural due process is not ripe for adjudication because they failed to avail themselves of the procedures put in place by Flint for disputing water bills. *See Williamson*, 473 U.S. at 194 ("[T]he taking claim is not yet ripe [because] respondent did not seek compensation through the procedures the State has provided for doing so.").

The plaintiffs' argument that they need not utilize Flint's procedure for challenging water bills because the City has already decided the issue, if it can be construed as a distinct challenge to the procedure itself, is wholly without merit. In essence, the plaintiffs argue that since the City has taken certain legal positions to defend itself in this lawsuit, it would have taken those same positions if the plaintiffs had brought their request for the five percent discount pursuant to the procedures set out in Flint Ord. § 46-17. We reject plaintiffs' position because it would effectively allow a litigant to bypass

any administrative remedies made available by a municipality by suing the municipality in court and then claiming that the finality requirement was met when the municipality assumed a legal position as part of its defense. This we will not do. Moreover, as we stated in *Hammond*, 866 F.2d at 177, "the entire government of a state cannot be disqualified from decisionmaking on grounds of bias when all that is alleged is a general bias in favor of the alleged state interest or policy."

### III

Plaintiffs also allege that the City of Flint violated their substantive due process rights by failing to give the five percent water discount to those water users who paid their bills on time. Though we do not endorse the Michigan trial court's ruling that the plaintiffs have a contractual right to the five percent discount, nor do we know at this time whether the City has or intends to appeal that ruling, we will take as given for the purposes of deciding this summary judgment motion that such a contractual right is established in Michigan law.

"The doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed has come to be known as substantive due process." *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992) (citation omitted). One aspect of substantive due process is the right to be free of "arbitrary and capricious" action by government actors. *Id.* at 1217. In *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), the Supreme Court discussed at length how the "substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." 523 U.S. at 847 (internal quotations and citation omitted). In other words, the "arbitrary and capricious" standard set forth in *Pearson* is simply another formulation of, but is no less stringent than, the more traditional "shocks the conscience" standard. The plaintiffs allege that they have been deprived of their property interest

in the five percent discount by the "arbitrary and capricious" action of the City of Flint.

In *Charles v. Baesler*, 910 F.2d 1349 (6th Cir. 1990), we examined the alleged substantive due process claim of a fireman who complained that he was "deprived of a contractually-based property interest" when the municipal government failed to promote him as required by local law. *Id.* at 1352. We held that

> [m]ost, if not all, state-created contract rights, while assuredly protected by procedural due process, are not protected by substantive due process. The substantive Due Process Clause is not concerned with the garden variety issues of common law contract. Its concerns are far narrower, but at the same time, far more important. Substantive due process affords only those protections so rooted in the traditions and conscience of our people as to be ranked as fundamental . . . .
>
> State-created rights such as Charles' contractual right to promotion do not rise to the level of fundamental interests protected by substantive due process.

*Id.* at 1353 (internal quotations and citations omitted).

We see no principled reason to distinguish the facts before us from the facts underlying our holding in *Charles*. The state-created contractual right to a discount on one's water bills, like the contractual right to a promotion, is an "interest [that] is redressed adequately in a state breach of contract action," *id*. at 1355 (quoting *Ramsey v. Bd. of Educ. of Whitley County, Ky.*, 844 F.2d 1268, 1274 (6th Cir. 1988)), and is simply not a proper subject of federal protection under the doctrine of substantive due process.

IV

Because the plaintiffs' procedural due process claim is not ripe for adjudication, or, in the alternative, is without merit, and because their substantive due process claim is likewise meritless, we AFFIRM the order of the district court.

----

**CONCURRENCE**

----

KAREN NELSON MOORE, Circuit Judge, concurring. I concur, but write separately to explain more fully why the district court did not err in granting the City of Flint ("Flint") summary judgment on plaintiffs' ("the residents") claim that Flint violated their substantive due process rights by issuing water bills for over-estimated quantities and by failing to comply with the requirements of Flint Ordinance § 46-52.2.

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To allege a violation of their substantive due process rights, the residents must assert either the "denial of a right, privilege, or immunity secured by the Constitution or by federal statute" or an official act which "'shocks the conscience' of the court." *Mertik v. Blalock*, 983 F.2d 1353, 1367-68 (6th Cir. 1993). "Where government action does not deprive a plaintiff of a particular constitutional guarantee or shock the conscience, that action survives the scythe of substantive due process so long as it is rationally related to a legitimate state interest." *Valot v. Southeast Local Sch. Dist. Bd. Of Educ.*, 107 F.3d 1220, 1228 (6th Cir.), *cert. denied*, 522 U.S. 861 (1997). Therefore, this court should undertake a three-step analysis of the residents' substantive due process claim. First, we should consider whether the asserted interest constitutes a fundamental constitutional right.[1] If the asserted interest is not a fundamental right, we then must evaluate whether Flint's conduct depriving the residents of that interest shocks

----

[1] "Where state action infringes upon a fundamental right, such action will be upheld under the substantive due process component of the Fourteenth Amendment only where the governmental action furthers a compelling state interest, and is narrowly drawn to further that state interest." *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1065 (6th Cir. 1998).

the conscience. Finally, if Flint's conduct does not shock the conscience, then this court must consider whether that conduct is rationally related to a legitimate state interest.

## I.  A Fundamental Constitutional Right

To allege a due process violation of a constitutionally-protected property interest, the residents first must show that governmental conduct deprived them of a right previously held under state law. *See Whaley v. County of Tuscola*, 58 F.3d 1111, 1113-14 (6th Cir.) ("The existence of a property interest for due process purposes depends in large part on state law."), *cert. denied*, 516 U.S. 975 (1995). As the Supreme Court has explained, "[p]roperty interests . . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). But although property interests are created by state law, "whether a substantive interest created by the state rises to the level of a constitutionally protected property interest is a question of federal constitutional law." *Whaley*, 58 F.3d at 1114. Federal law dictates that "only those interests to which one has a legitimate claim of entitlement," including but not limited to "statutory entitlements," are protected by the due process clause. *Hamilton v. Myers*, 281 F.3d 520, 529 (6th Cir. 2002) (internal quotations omitted).

The majority relies on *Charles v. Baesler*, 910 F.2d 1349 (6th Cir. 1990), for the proposition that "[m]ost, if not all, state-created contract rights, while assuredly protected by procedural due process, are not protected by substantive due process" because "[t]he substantive Due Process Clause is not concerned with the garden variety issues of common law contract." *Id.* at 1353. Charles argued that, pursuant to a local ordinance, he had a categorical substantive due process right to a promotion. His contractual right to promotion did not qualify as a fundamental interest, however, because "[r]outine state-created contractual rights are not

'deeply rooted in this Nation's history and tradition,' and, although important, are not so vital that 'neither liberty nor justice would exist if [they] were sacrificed." *Id.* (quoting *Bowers v. Hardwick*, 478 U.S. 186, 191, 192 (1986). Moreover, the deprivation of Charles's contractual right could be readily compensated "in a breach of contract action in the Kentucky courts." *Charles*, 910 F.2d at 1355 (internal quotation omitted).

The majority suggests that any contractual right the residents may have to receive a discount on their water bills is no different than Charles's right to a promotion because they are both interests that can be "redressed adequately in a state breach of contract action." *Id.* (internal quotations omitted). It is true that, like the plaintiff's claim in *Charles*, the residents' claim could be redressed in a state contract action, but that factor is not determinative of whether an asserted interest is protected under the Due Process Clause. The scope of substantive due process protections with respect to property rights turns not on the availability of state contract remedies, but on whether "liberty and justice are threatened, in the constitutional sense, by the failure of the government and its officials to abide by their contract." *Id.* at 1353. In fact, as the *Charles* court noted, "[t]he Supreme Court has assumed, without deciding, that substantive due process *might* protect some state-created, contractually-based property interests."[2] *Id.* at 1353-54. However, in light of the fact that "[g]overnments breach contracts virtually every day without dire consequences ensuing to the human dignity or basic

---

[2]In light of the Supreme Court's recognition that substantive due process may protect some state-created contract rights, *Regents of the University of Michigan v. Ewing*, 474 U.S. 213, 222-23 (1985), "the Circuits have split on the question whether substantive due process protects run-of-the-mill state-created contractual property interests. The Eighth Circuit has continued to recognize substantive due process protection from 'arbitrary and capricious' deprivation of some contract rights." *Charles v. Baesler*, 910 F.2d 1349, 1354 (6th Cir. 1990). The *Charles* court followed the majority approach, concluding that, under Sixth Circuit law, "Charles' contractual promotion right does not enjoy substantive due process protection." *Id.*

autonomy of the promisees . . . . in the usual breach of contract case such as this, failure to meet contractual obligations cannot be equated with the sort of injustice inherent in egregious abuse of government power." *Id.* at 1353 (internal quotation omitted). This court has never concluded "that all state-created contract rights lack substantive due process protection." *Id.* at 1355 (distinguishing between contract rights creating fundamental interests and those creating lesser interests).

Because the existence of state law remedies is only one factor in determining whether an interest is a fundamental right, it is necessary to evaluate whether the residents' claim that their right to a discount pursuant to § 46-52.2 "is deeply rooted in our national history and tradition is both legally and historically indefensible." *Id.* at 1353. As the *Charles* court explained, "[t]he touchstone of substantive due process protection undoubtedly remains our history and social traditions." *Id.* at 1355. Where an "alleged right certainly cannot be considered so rooted in the traditions and conscience of our people as to be ranked as fundamental," substantive due process does not apply. *Reno v. Flores*, 507 U.S. 292, 303 (1993) (internal quotation omitted).

Although this court has yet to consider the whether the right asserted is fundamental, I would conclude that "an interest in a fair water bill is not such a fundamental right that it triggers the due process clause's substantive protections," particularly where the state has provided a procedural remedy. *Chun v. New York City Dep't of Envtl. Prot.*, 989 F. Supp. 494, 497 (S.D. N.Y. 1998). The residents offer no evidence that their interests in accurate billing and receiving the discount awarded under the ordinance are deeply "rooted in the traditions and conscience of our people." *Reno*, 507 U.S. at 303. Although the Constitution commands obedience to statutes, "a federal court will not require a state to follow its own law." *Carson v. Block*, 790 F.2d 562, 565 (7th Cir.), *cert. denied*, 479 U.S. 1017 (1986). As the Seventh Circuit has explained,

A rule equating a violation of a statute with a violation of the Constitution might make states less willing to help their residents, because they could not limit the resources devoted to that task. The body with the power to create a rule also has the right incentives to police it. Cities and states are not hostile to their own laws; they do not need federal courts to prod them to enforce rules voluntarily adopted, although federal courts may be indispensable in ensuring that states adhere to constitutional norms.

*Archie v. City of Racine*, 847 F.2d 1211, 1218 (7th Cir. 1988) (en banc), *cert. denied*, 489 U.S. 1065 (1989).

Therefore, I agree with the majority that the residents do not articulate the deprivation of a right that is fundamental for substantive due process purposes.

## II. Conduct that Shocks the Conscience

Because the residents' complaint does not allege the violation of a fundamental right, "the claim must be based on behavior that shocks the conscience." *Braley v. City of Pontiac*, 906 F.2d 220, 226 (6th Cir. 1990). "[T]he due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm," *County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998), but it does "protect citizens from the arbitrary exercise of governmental power," *Darrah v. City of Oak Park*, 255 F.3d 301, 306 (6th Cir. 2001) (internal citations omitted). To allege behavior that rises to the level of a substantive due process violation, the residents "must demonstrate that the state acted with the requisite culpability" by engaging in conduct "so 'egregious' that it can be said to be 'arbitrary in the constitutional sense.'" *Ewolski v. City of Brunswick*, 287 F.3d 492, 510 (6th Cir. 2002) (citations omitted). Whether particular government conduct "shocks the conscience" depends on the factual circumstances of the conduct. *Id.*

The Supreme Court has explained that "criteria to identify what is fatally arbitrary differ depending on whether it is

legislation or a specific act of a governmental officer that is at issue." *Lewis*, 523 U.S. at 846. In this case, the residents' complaint addresses not the ordinance enacted to provide a discount on water bills, but Flint's "abusive executive action" in failing to implement the discount. *Id.* Thus, the residents must demonstrate that "the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* at 847 n.8. Determining whether the residents have made such a showing "necessarily reflects an understanding of traditional executive behavior, of contemporary practice, and of the standards of blame generally applied to them." *Id.*

In this case, the ordinance implementing the five percent discount clearly explained that "[w]ater and sewer bills shall, as soon as practicable set forth the discounted amount and the last day to take advantage of the discount on the face of the statement." Flint Ord. § 46-52.2(d). The ordinance provided that the discount would apply where residents paid the bill in full "prior to the due date as set forth on said bill." *Id.* § 46-52.2(b). In light of the fact that "a federal court will not require a state to follow its own law," *Carson*, 790 F.2d at 565, and the fact that the ordinance arguably expressly contemplates delayed implementation, I cannot conclude that Flint's failure to provide the discount is so egregious or outrageous that it shocks the conscience. Moreover, I have been unable to find any case where a city's failure to implement an enacted ordinance amounted to government conduct that shocked the conscience. Likewise, estimating water usage for billing purposes has long been recognized as a legitimate practice. *See, e.g.,* Note, *An Aspect of Public Utility Rate Valuation: The Working Capital Allowance*, 102 U. Pa. L. Rev. 491, 507 (1954) (explaining that many utilities offset the cost of services that they bear until corresponding revenues are obtained by "rendering estimated bills in advance, with a periodic reading of meters and adjusting of accounts").

Therefore, I would conclude that the residents have failed to show that Flint's conduct was "arbitrary in the

constitutional sense." *Lewis*, 523 U.S. at 846 (quotation omitted).

### III.  Rationally Related to a Legitimate State Interest

Because Flint's failure to implement the discount and its practice of estimating water usage for billing purposes do not deprive the residents of a fundamental right or shock the conscience, this conduct will "survive[] the scythe of substantive due process so long as it is rationally related to a legitimate state interest." *Valot*, 107 F.3d at 1228.  Flint asserts that it has a legitimate interest in not implementing the discount contemplated by the ordinance until it is able to do so.  According to Flint,

> When the City legislature was entertaining this ordinance as a proposal, the City's current billing system was outdated and at the time incapable of furthering the intent of the ordinance.  In addition to the City's deficiencies with its billing system, it was known that [the City's bank] . . . also could not handle the demands of the new ordinance. . . . To remedy the internal deficiencies, the city legislature added discretionary language to the ordinance to allow for the time needed for the software changeover.

Flint Br. at 5.  Flint's decision to delay the implementation of its discount is rationally related to its legitimate interest in ensuring that it is technologically able to provide the discount.  Moreover, Flint's practice of estimating water usage for billing purposes is rationally related to its legitimate interest in lowering the costs of monitoring water usage.  Therefore, the residents have failed to show that Flint's conduct is not rationally related to the city's legitimate interests.

Because Flint's conduct does not implicate a fundamental right, does not shock the conscience, and is rationally related to a legitimate state interest, neither Flint's practice of estimated billing nor its failure to comply with § 46-52.2 violates the residents' Fourteenth Amendment substantive due process rights.