**Kimberly G. McLAUGHLIN,**
**Plaintiff–Appellant,**

v.

**Charles H. WEATHERS, John K.**
**Walkup, and Suzette Peyton,**
**Defendants–Appellees.**

No. 97–6311.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 9, 1998.

Decided March 12, 1999.

Robert S. Catz (argued and briefed), John E. Herbison (briefed), Nashville, Tennessee, for Plaintiff–Appellant.

Suzzette Payton, Nashvillee, TN, pro se; Janet M. Kleinfelter (argued and briefed), Office of the Attorney General, Financial Division, Nashville, TN, for Defendants–Appellees.

Before: WELLFORD, SILER, and GILMAN, Circuit Judges.

## OPINION

WELLFORD, Circuit Judge.

Plaintiff Kimberly G. McLaughlin appeals from the district court's judgment which found that her due process challenge to the constitutionality of Tennessee Code Annotated § 29–6–101, *et seq.*, the statute dealing with attachment, was without merit. Because we find that this statute is not facially invalid as lacking due process, and that even if it was, there were adequate state remedies McLaughlin could have pursued, we affirm the judgment of the district court and find that McLaughlin's 42 U.S.C. § 1983 claim must fail.

### I. FACTS AND PROCEDURAL HISTORY

In October of 1996, Charles Weathers, defendant in this confusing controversy, filed a complaint in a Davidson County, Tennessee state court against plaintiff, Kimberly G. McLaughlin, and her attorney, Robert S. Catz, claiming rent and damages due from the former under a lease covering residential property occupied by the former, and a tort claim against the latter for abuse of process. Shortly thereafter, Weathers and his attorney, Suzette Peyton, filed an amended state court complaint coupled with an application for writ of attachment of $3,000 held by the Davidson County Court Clerk posted to sat-

isfy a judgment arising out of a settlement in favor of McLaughlin and Catz in an earlier action. As counsel for Weathers, Peyton filed her own and Weathers' affidavits claiming exigent circumstances for the action under Tenn. Code Ann. § 29–6–101.[1] This application for relief by judicial attachment was presented by said counsel, *ex parte*, to state Judge Walter C. Kurtz, who granted the relief sought requiring, through the court clerk, that Weathers and Peyton, in turn, post a $3,000 bond to protect the adversary parties in the event Weathers and Peyton were unsuccessful in the underlying claim.

McLaughlin moved to dismiss the Weathers–Peyton complaint, which motion was granted some ten weeks later on January 10, 1997. At the hearing on McLaughlin's motion, the state court *sua sponte* determined that the writ of attachment had been improvidently granted and thereupon dissolved said writ, ordering at the same time that the $3,000 be paid over to McLaughlin and Catz. In February, this decision was carried out and a check was issued to Catz and McLaughlin. Furthermore, the state judge denied Weathers's motion to amend the decision in March.

In the meantime, McLaughlin filed this action for damages under 42 U.S.C. § 1983 and declaratory judgment under 28 U.S.C. § 2201 in federal district court on January 9, 1997, one day before the writ of attachment was dissolved and the underlying leasehold cause of action was dismissed as to McLaughlin.[2] The action for declaratory judgment was filed against the Attorney General of the State of Tennessee challenging the "prejudgment" attachment seizure instituted by Weathers as violative of McLaughlin's due process rights, and sought a holding that TCA § 29–6–101, *et seq.* is unconstitutional. Service of process on defendants was attained January 14, 1997.

The Attorney General filed a notice to dismiss the McLaughlin action based upon his contention that plaintiff failed to establish a redressable injury under 42 U.S.C. § 1983 (plaintiff failed to show that there was no adequate state remedy available), and thus the district court had no jurisdiction. McLaughlin, in fact, did not deny, in her response to the motion to dismiss, that other remedies not utilized may have been available to her. Furthermore, the Attorney General claimed that the case was now moot because the relief she sought had been effectually attained before service of process on her federal suit.

The district court granted judgment to the defendants after a hearing on September 17, 1997, holding, in part:

> The Court has reviewed the statutory scheme. The Court has found nothing that would indicate that the state remedies are inadequate, or fail to provide sufficient process to remedy the alleged constitutional violation. A writ of attachment may

---

1. Tenn.Code Ann. § 29–6–101 reads:

    Any person having a debt or demand due at the commencement of an action, or a plaintiff after action for any cause has been brought, and either before or after judgment, may sue out an attachment at law or in equity, against the property of a debtor or defendant, in the following cases:

    (1) Where the debtor or defendant resides out of the state;

    (2) Where he is about to remove, or has removed, himself or property from the state;

    (3) Where he has removed, or is removing, himself out of the country privately;

    (4) Where he conceals himself, so that the ordinary process of law cannot be served upon him;

    (5) Where he absconds, or is absconding or concealing himself or property;

    (6) Where he has fraudulently disposed of, or is about fraudulently to dispose of, his property;

    (7) Where any person liable for any debt or demand, residing out of the state, dies, leaving property in the state; or

    (8) Where the debtor or defendant is a foreign corporation which has no agent in this state upon whom process may be served by any person bringing suit against such corporation; provided, however, that the plaintiff or complainant need only make oath of the justness of his claim, that the debtor or defendant is a foreign corporation and that it has no agent in the county where the property sought to be attached is situated upon whom process can be served.

2. Judge Kurtz also held that the motion to dismiss as to defendant Catz has merit as to some claims (not the assault claim) and Weathers's motion for leave to amend "is meritorious."

only issue under certain specified exigent circumstances. The statutory scheme has safeguards to challenge the grounds upon which a writ is issued and recover damages. There is no indication from the record that the Plaintiff ever utilized any of the several available judicial remedies. Any loss suffered by the Plaintiff was not caused by the prejudgment attachment statute, but by the Plaintiff's failure to utilize any of the available judicial remedies. The Court finds that the Plaintiff's due process argument is without merit. Plaintiff's request for declaratory judgment is therefore denied. Because there is no constitutional violation, the Plaintiff will be unable to pursue a civil rights action under section 1983. Accordingly, the Court will dismiss this action for lack of subject matter jurisdiction.

The Court notes that the prejudgment writ of attachment was dissolved on January 15, 1997. Alternatively, the Court concludes that this action would be considered moot even if the Plaintiff was able to establish a due process violation.

This timely appeal followed.

The record is silent as to exactly when McLaughlin filed any response or motion seeking any relief from the issuance of the attachment at issue in state court. What is apparent from McLaughlin's own complaint is that the $3,000 involved "had been tendered on behalf of Weathers to the Circuit Court Clerk in a satisfaction of an agreed judgment in favor of Plaintiff [McLaughlin] and Catz *to be held by the Circuit Court Clerk for twenty days.*" Prior to the expiration of the twenty day period, Weathers, by suit and by a petition for attachment of that money paid into court, sought, in effect, to challenge the prior agreed judgment. By Tennessee statutory requirement, however, Weathers had to meet strict statutory requirements indicating just cause bases for such extraordinary relief. *See Willshire v. Frees*, 184 Tenn. 523, 201 S.W.2d 675, 678 (Tenn.1947). A state judge, with right of absolute immunity for his actions, determined initially that Weathers had met the statutory requirements for attachment. McLaughlin conceded that Judge Kurtz, on

October 30, 1996, directed the clerk to issue the "prejudgment writ of attachment" on the money paid into the registry of the court by Weathers himself. In effect, an attachment bond was permitted to be substituted for the money on the registry by the judge pending the outcome of the suit on the merits.

## II. ANALYSIS

We hold that the Tennessee prejudgment statute is not facially invalid as lacking due process. Even if the statute was not facially constitutional, we would require McLaughlin to prove the absence of adequate state remedies, which she was unable to do. Thus, McLaughlin's § 1983 claim must fail.

Plaintiff's claim, in a nutshell, is that she was deprived of property without due process by state action, that is, through Weathers' utilization of Tennessee statute § 29–6–101, *et seq.* This alleged constitutional violation was the basis of the § 1983 claim and the seeking of declaratory judgment to invalidate this law, or the application of the law under the factual circumstances alleged by McLaughlin. We construe plaintiff's claim to assert both a facial and as applied challenge to Weathers' actions and his application of the Tennessee prejudgment attachment law.

In her complaint, one of the cases plaintiff relies on to a large extent is *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), in support of her contentions. *Mitchell* involved a Louisiana "sequestration procedure" available to a mortgage or lien holder with respect to already encumbered property. The purpose was to forestall waste or alienation of the encumbered property. Because the creditor claimant filed a sufficient bond and a verified affidavit under the state procedure challenged, and because the debtor might promptly seek dissolution of the writ, the statutory procedure was upheld as constitutional, facially and as applied, despite the fact that debtor Mitchell was given no prior notice or opportunity for a hearing prior to the sequestration or judicial attachment of the property in question by W.T. Grant Co. In that case, Mitchell, after notice of the action about a month after the sequestration, filed in state court a motion to dissolve the writ

unsuccessfully. The Court defined "sequestration" as "the modern counterpart of an ancient civil law device to resolve conflicting claims to property." *Id.* at 605, 94 S.Ct. 1895. As is the case in Tennessee under the challenged statutory procedure, the creditor must, in Louisiana, set out with specificity the "nature of the claim ... shown by a verified petition or affidavit." *Id.* This same type of procedure was followed by Weathers in Tennessee, and he also filed a "sufficient bond" as required by the state judge. *Id.* at 606, 94 S.Ct. 1895. For good measure, the Court added that "there is scant support in our cases for the proposition that there must be final judicial determination of the seller's [creditor-claimant's] entitlement before the buyer [debtor-defendant] may be even temporarily deprived of possession...." *Id.* at 609, 94 S.Ct. 1895. The Court, moreover, acknowledged, but minimized, the risk that a writ might be "wrongfully issued by a judge" in light of statutory protections. *Id.* at 609–610, 94 S.Ct. 1895. In addition, Mitchell, like McLaughlin in the instant case, did not avail himself of a prompt opportunity to challenge the sequestration in state court, and this factor was deemed adverse. *Id.* at 610, 94 S.Ct. 1895.

■ No particular form of procedure is guaranteed by due process of law. *Id.* "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Id.* (quoting *Cafeteria and Restaurant Workers v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961)). We are convinced that the Tennessee statutory scheme at issue "has reached a constitutional accommodation of the interests" of both parties in such disputes. *Id.*

■ Citing and distinguishing other cases relied upon by plaintiff, *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), and *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972),[3] *Mitchell* added: "The usual rule has been '[w]here only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for ultimate judicial determination of liability is adequate.'" *Id.* at 611, 94 S.Ct. 1895 (quoting *Phillips v. Commissioner,* 283 U.S. 589, 596–597, 51 S.Ct. 608, 75 L.Ed. 1289 (1931)). Under the *Mitchell* rationale, we deem the Tennessee prejudgment statute not to be facially invalid as lacking due process, and plaintiff's § 1983 action must fail. To the extent plaintiff claimed punitive damages because Weathers was allegedly motivated by "evil motive" and was "reckless," we would note that in any event, such a claim is unwarranted under the guise of a § 1983 unlawful state action. "[T]he conduct [so described] of which petitioner complained could not be ascribed to any governmental decision; rather respondents [Weathers and Peyton] were [allegedly] acting contrary to the relevant policy articulated by the State." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 940, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). They had no authority as private actors "to put the weight of the State behind their private decision ... [if they] invoked the statute without the grounds to do so." *Id.*

■ In addition, even if we did not hold the Tennessee statute to be facially constitu-

---

**3.** *Sniadach* and *Fuentes* dealt with prejudgment garnishment of wages, and repossession "without judicial order" of goods because of an unpaid balance to the installment seller, respectively, *see id.* at 614, 615, 94 S.Ct. 1895, and neither situation was deemed comparable to the type of prejudgment attachment involved. These cases should be compared with *N. Georgia Finishing, Inc. v. Di–Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975), also cited by plaintiff as support for her position, which interpreted a prejudgment garnishment statute in the face of a due process challenge by the debtor. The Georgia process in *Di–Chem* was issued by the court clerk without notice to the debtor or "without participation by a judge" and was deemed to

have "*none* of the saving characteristics of the Louisiana statute" in *Mitchell. Id.* at 607, 94 S.Ct. 1895 (emphasis added). *Fuentes* represented a "4–3 vote by a bobtailed Court," and was felt not to have "much influence or precedent" value in *Di–Chem,* 419 U.S. at 615, 616, 95 S.Ct. 719 (Blackmun, J., dissenting). *See also id.* at 609, 95 S.Ct. 719 (Powell, J., concurring). *Di–Chem* was later described as invalidating "an *ex parte* garnishment statute that not only failed to provide for notice and prior hearing but also failed to require a bond, a detailed affidavit setting out the claim, the determination of a neutral magistrate, or a prompt post-deprivation hearing." *Connecticut v. Doehr,* 501 U.S. 1, 10, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991).

tional as affording adequate due process, we would require McLaughlin to "prove the absence of adequate state remedies as an element of the [claimed] constitutional tort [42 U.S.C. § 1983]." *Wagner v. Higgins,* 754 F.2d 186, 192 (6th Cir.1985). This principle was established in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). *See also Vicory v. Walton,* 721 F.2d 1062, 1065–66 (6th Cir.1983). *Parratt*'s holding was reaffirmed in *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), holding that even an intentional deprivation of a constitutional right, in that case the deprivation of property without due process, by a state actor would not authorize a § 1983 claim if "an adequate post-deprivation [state] remedy [exists]." *Id.* at 536, 104 S.Ct. 3194. "[T]hat [McLaughlin] might not be able to recover under these remedies the full amount which he might receive in a § 1983 action is not as we have said, determinative of the adequacy of the state remedies." *Id.* at 535, 104 S.Ct. 3194 (citing *Parratt,* 451 U.S. at 544, 101 S.Ct. 1908). "[I]n challenging a property deprivation, the claimant must either avail himself of the remedies guaranteed by state law or prove that the available remedies are inadequate." *Id.* at 539, 101 S.Ct. 1908 (O'Connor, J., concurring).

▪ Plaintiff has availed herself of available state remedies by accomplishing dismissal of the attachment action and by receipt of the $3,000 in dispute. She has not demonstrated that other efficacious state remedies were not available to her under *Parratt* and *Hudson.* "When adequate state remedies are provided and followed, no uncompensated taking or deprivation of property without due process can result." *Hudson,* 468 U.S. at 539, 104 S.Ct. 3194 (O'Connor, J., concurring).[4]

Plaintiff argues in her brief that *Connecticut v. Doehr,* 501 U.S. 1, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991), supports her position. It is true in *Doehr,* under the particular circumstances of that case, that a Connecticut prejudgment statute was held to deny due process on a $75,000 attachment on the de-

fendant's home. The facts in *Doehr* were very different from the facts in *Mitchell* and from the facts in the instant case. The amount involved was very substantial; the defendant's *home,* unrelated to the nature of plaintiff's claim, was encumbered; plaintiff was neither a creditor nor had he any contractual relationship with defendant; the plaintiff's "skeletal affidavit" consisted of five conclusory sentences; and Connecticut law required only a showing of "probable cause" and did not require the plaintiff to post a bond at all.

*Doehr* acknowledged that under *Mitchell* "a *properly supported claim* would be an exigent circumstance permitting postponing any notice or hearing until after the attachment is effected." *Id.* at 16, 111 S.Ct. 2105. *Doehr* was simply a very different case and the Connecticut statute was very different from the Tennessee statute at issue. The Court determined in *Doehr* that under the circumstances plaintiff's interest was *de minimis* in defendant's home. Connecticut did *not* require an attachment bond, and was one of only three states that permitted prejudgment attachments "in situations that do not involve any purportedly heightened threat to plaintiff's interest." *Id.* at 18, 111 S.Ct. 2105. Personal property, not real property, especially not a homeplace, is involved in the instant case.

▪ It is clear that the Tennessee attachment procedures are very different from those in Connecticut and specifically may come into play only under special circumstances that present a "heightened threat" to a plaintiff's interests. *Doehr* also emphasized the importance of a statutory requirement that a plaintiff seeking attachment post a bond; Connecticut had no such requirement. By an appendix to its *Doehr* decision, the Court reflected the stark and important differences between Connecticut and Tennessee legal attachment requirements. *Id.* at 24, 25, 111 S.Ct. 2105. McLaughlin's reliance on *Doehr* fails for the reasons indicated. We give little credence to McLaughlin's argument that the Tennessee judge in the attach-

---

**4.** The dissenters in *Hudson,* 468 U.S. at 541, 104 S.Ct. 3194, conceded that the "complaint [involving an alleged intentional taking of property by a

state actor] does not allege a violation of [the petitioner's] constitutional right to procedural due process."

ment procedure has *"no discretion* whether the writ of attachment should issue." In our view, the judge must make a sound, reasoned decision based on all the circumstances presented whether the plaintiff meets all the statutory requirements and safeguards before authorizing the attachment with adequate bond protection. There has been nothing demonstrated by McLaughlin that would preclude her, immediately upon learning of the issuance of the attachment, from going into state court to challenge and set aside the writ.

Nor do we agree with plaintiff that *Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990), requires a finding of a due process violation because there was no pre-deprivation hearing. Plaintiff's allegations in *Burch* meant "only that petitioners [state agents] disregarded their duty to ensure that the proper [state hospital admission] procedures were followed, not that they, like the prison guard in *Hudson,* were bent upon effecting the substantive deprivation...." *Id.* at 137, 110 S.Ct. 975. In the instant case, McLaughlin does not deny that Weathers filed the attachment with statutorily required supporting documentation, including affidavits; appeared before a state judge to establish that specific statutory requirements were met; and posted an adequate bond to protect McLaughlin. The wrongful act in controversy in *Burch* was "not an act sanctioned by state law," as was the issuance of the attachment in the instant case. *Id.* at 138, 110 S.Ct. 975. In *Burch,* "pre-deprivation safeguards would be of use in preventing [deprivation of a mental patient's personal freedom]" whereas in this case, post-deprivation actions is all that is due because plaintiff was rendered, in effect, whole by restoration of her property. *Id.* at 139. *Burch,* furthermore, cited with approval *Mitchell v. W.T. Grant Co., supra* ("hearing not required before issuance of writ to sequester debtor's property"). *Id.* at 128, 110 S.Ct. 975.

Plaintiff's arguments and citations of authority assume that her allegations sufficiently assert and demonstrate a due process violation despite the fact that defendant essentially followed state attachment procedures and particular statutory requirements and effectuated a temporary attachment dissolved the day after suit was brought. State procedures themselves, very shortly after the attachment issued, brought about a dissolution and provided an adequate remedy to plaintiff.

Thus, for all of these reasons, we hold that the plaintiff's § 1983 claim must fail.

## III. CONCLUSION

Accordingly, we **AFFIRM** the decision of the district court that plaintiff's due process claim, which argues that T.C.A. § 29–6–101, *et seq.* is facially invalid, or that it was unconstitutionally applied in this case, is without merit. We find no error, moreover, in the district court's conclusion, under all of the circumstances, that this action should be deemed moot in the alternative. Judgment will be entered for the defendants.