NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0034n.06

Case No. 16-5811

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jan 13, 2017
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| MIKE PARTIN; CHRISTA PARTIN; MIKE PARTIN TRUCKING, | ) ) ) | |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| FLOYD DON DAVIS; FRANKLIN COUNTY; JASON IKARD; IKARD TOWING; MARTIN TYLER, Individually, | ) ) ) ) | |
| Defendants-Appellees. | ) | |

BEFORE: DAUGHTREY, CLAY, and COOK, Circuit Judges.

COOK, Circuit Judge. Mike Partin, Christa Partin, and Mike Partin Trucking, LLC (the "Partin Plaintiffs"), challenge the seizure of their two semi-trailer trucks under a state court writ of execution. They bring 42 U.S.C. § 1983 claims for violations of their Fourth and Fourteenth Amendment rights against the lawyer who pursued the writ of execution, the sheriff's deputy who enforced it, the county employing the sheriff's deputy, and the towing company and its owner that helped haul the seized trucks. The district court granted the Defendants' motions for summary judgment on the Partin Plaintiffs' constitutional claims and dismissed the case. We AFFIRM.

**I.**

**A. Factual Background**

This civil-rights action emerged out of a separate state court lawsuit. In that case, Larry Bachar sued Mike Partin and his small hauling business, Mike Partin Trucking, LLC, for injuries caused in a car accident. Following a trial in August 2014, a jury returned a $199,800 verdict in favor of Bachar. The Circuit Court of Franklin County ("Franklin Circuit Court") entered judgment on August 26, 2014.

Contesting this outcome, Mike Partin and Partin Trucking filed what they styled as a Motion for a New Trial in September 2014, seeking a new trial or remittitur of the jury award. They argued that the evidence on comparative fault and damages weighed against the jury verdict, and they also asserted juror bias. The Franklin Circuit Court denied the motion on December 22, 2014, concluding in a one-page order that "the verdict [was] supported by the evidence received at trial." Nevertheless, on January 14, 2015, Mike Partin and Partin Trucking filed a *second* post-trial motion, styled as a Motion for Reconsideration, seeking reevaluation of their claim for remittitur and requesting an evidentiary hearing on the alleged juror bias.

While this second motion was pending, Bachar's attorney, Floyd Don Davis, initiated execution proceedings on the judgment by submitting a letter and writ-of-execution form to the Franklin Circuit Court Clerk. The clerk issued a writ of execution (the "Writ") on January 23, 2015. The Writ specified a $199,800 judgment amount (plus interest and fees) and described the property as "[a]ll semi-trailer trucks used in [Mike Partin's] trucking business."

On January 26, 2015, Sheriff's Deputy Martin Tyler picked up the Writ from a stack of warrants and other papers sent by the Clerk's Office. After reviewing it, Deputy Tyler wanted to

ensure that it was "good" before proceeding with the execution. He contacted Pamela Anderson, the deputy clerk who prepared the Writ, and she confirmed its validity.

Deputy Tyler then drove to Mike Partin's address to begin the judgment-execution process. There, he spoke with Christa Partin, Mike's wife and the co-owner of Partin Trucking, announcing that he was executing a judgment for around $200,000 and serving her with the Writ. Christa informed him that Partin Trucking had insurance and that her husband planned to appeal, but he continued with the execution anyway. According to Christa, Deputy Tyler asked her for the keys to the trucks so that he did not "have to break the locks on the doors or bust the ignitions out to get the trucks." She also testified that he told her to cooperate or else he would "get a warrant" to arrest her for "obstruction of justice." The deputy then phoned Mike Partin, explained the execution, and informed him that if he wanted to stop the process, he had to go to a judge.

After this conversation, the Partins cooperated. Deputy Tyler asked Christa about the location of the trucks, and she told him that he could find two or three at a grain facility in Tullahoma, Tennessee, located in neighboring Coffee County. She also handed over the trucks' keys. Deputy Tyler gave her his phone number in case her husband needed to call him.

Upon leaving the Partins' home, Deputy Tyler contacted the Tullahoma Police Department to tell them about the Writ and the trucks' location. The Tullahoma authorities agreed to help enforce the Writ, and by the time Deputy Tyler reached the grain facility, they were already on site awaiting his arrival. Deputy Tyler spotted the trucks with "Mike Partin Trucking" painted on the side and ran their vehicle identification numbers to ensure that they belonged to Partin Trucking. Deputy Tyler then arranged for Jason Ikard and his towing company, Ikard Towing, to drive the trucks to a holding facility.

Later that day, Deputy Tyler learned that two of the Partins' other trucks were at a Jack Daniel's distillery in Moore County, Tennessee. He contacted Moore County law enforcement for assistance with the seizure. The Moore County authorities advised him that they were not allowed to go onto Jack Daniel's private property and thus could not assist him. They did, however, suggest that he contact Jack Daniel's directly to request access. But before Deputy Tyler made further progress, the Franklin Circuit Court issued a Temporary Restraining Order ("TRO") that directed the parties to cease all execution activity. Deputy Tyler obeyed the TRO.

At the TRO hearing the next day, January 27, 2015, the Franklin Circuit Court set aside the execution. The Partins participated in the hearing, and afterward they retrieved their seized trucks from the holding facility. On March 4, 2015, the Franklin Circuit Court issued a Final Order denying Mike Partin and Partin Trucking's Motion for Reconsideration on the issue of remittitur and also denying their request for an evidentiary hearing on juror bias.

## B. Procedural Background

Less than one month after retrieving their trucks, the Partin Plaintiffs filed this action in the United States District Court for the Eastern District of Tennessee, challenging the lawfulness of the judgment-execution proceedings. They alleged claims under 42 U.S.C. § 1983 against Deputy Tyler, in his individual capacity, and Franklin County (the "County Defendants"), as well as Jason Ikard and Ikard Towing (the "Ikard Defendants") and attorney Floyd Don Davis, contending that these parties violated their Fourteenth Amendment procedural and substantive due process rights and their Fourth Amendment right to be free from unreasonable seizures. The Partin Plaintiffs further pleaded a § 1983 civil conspiracy claim against all Defendants, alleging concerted action to violate their constitutional rights. They also recited several state law causes

of action, including intentional infliction of emotional distress and tortious interference with their contracts.

After discovery, the Defendants filed motions for summary judgment, and the Partin Plaintiffs filed a cross-motion for partial summary judgment. With respect to the § 1983 claims, the district court granted the Defendants' motions for summary judgment and denied the Partin Plaintiffs' motion for partial summary judgment, concluding that the Writ and truck seizure did not violate the claimants' procedural due process, substantive due process, or Fourth Amendment rights. It then declined to exercise supplemental jurisdiction over the state law claims, dismissing them without prejudice.

The Partin Plaintiffs timely appealed the district court's judgment denying their § 1983 constitutional claims.

**II.**

We review the district court's decision to grant summary judgment de novo, affirming if the evidence demonstrates no genuine issue exists as to any material fact and that the Defendants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Ramsey v. Penn Mut. Life Ins. Co.*, 787 F.3d 813, 818 (6th Cir. 2015). A dispute is genuine if a reasonable jury could return a verdict for the Partin Plaintiffs. *Tysinger v. Police Dep't of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006). "The court must view the evidence in the light most favorable to [the Partin Plaintiffs] and draw all reasonable inferences in [their] favor." *Id.*

We address the viability of the Partin Plaintiffs' constitutional claims against each Defendant in turn.

**A. The § 1983 Claims against the County Defendants**

*1) The § 1983 Procedural Due Process Claim against Deputy Tyler*

The Partin Plaintiffs' procedural due process claims are difficult to parse as they relate to Deputy Tyler, since most of their contentions of constitutional wrongdoing pertain to either Defendant Davis or the deputy clerk, Pamela Anderson, who issued the Writ upon Davis's application.[1] The Partin Plaintiffs do, however, proffer a general claim that Deputy Tyler "wrongfully" seized their trucks "without appropriate due process." In analyzing their procedural due process claim, the district court concluded that the Partin Plaintiffs "failed to establish that they were deprived of adequate procedural rights prior to [the seizure]." The district court is correct.

The Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. To establish a violation of their due process rights, the Partin Plaintiffs must show:

> (1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, (2) that they were deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford them adequate due process procedural rights prior to depriving them of their protected interest.

---

[1] To the extent that the Partin Plaintiffs buttress their procedural due process claims by suggesting that clerk Anderson acted improperly (as opposed to Deputy Tyler), their arguments hold no water. The Partin Plaintiffs failed to name Anderson as a defendant when they originally brought suit, but even if they had, quasi-judicial immunity bars their claims. "Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994) (citations omitted). Here, in issuing writs of execution based on court judgments, Anderson performed a "truly judicial act." *See id.* (quoting *Foster v. Walsh*, 864 F.2d 416, 417–18 (6th Cir. 1988)); *see also Yarborough v. Garrett*, 579 F. Supp. 2d 856, 860 (E.D. Mich. 2008) (holding that quasi-judicial immunity extended to a clerk who allegedly impeded a state prisoner's right of access to the courts by denying a request for transcripts). Any wrongdoing on Anderson's part is therefore not actionable under § 1983.

*Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999) (citing *Zinermon v. Burch*, 494 U.S. 113, 125–26 (1990)). With respect to the third prong, "[p]rocedural due process generally requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest." *Warren v. City of Athens, Ohio*, 411 F.3d 697, 708 (6th Cir. 2005).

The parties dispute the third prong of the due process analysis: whether Deputy Tyler afforded the Partin Plaintiffs adequate procedural due process rights when he deprived them of their trucks. But the Partin Plaintiffs voice no argument that Tennessee's writ-of-execution procedures themselves are inadequate. Instead, they suggest that, under Tennessee's procedural rules, the state judgment was not final for purposes of execution, and therefore no writ should have issued.

Construing this claim as an "as applied" due process challenge, it fails for two reasons.

*First*, the Partin Plaintiffs have not shown a lack of adequate process prior to enforcement of the state court judgment. The thrust of their argument is that Deputy Tyler should not have enforced the Writ under Tennessee law because their second post-trial motion was pending. In this vein, they argue that they were entitled to a hearing on their Motion for Reconsideration prior to enforcement of the judgment. But even assuming they are correct about Tennessee's writ of execution rules, a state actor's failure to follow *state* procedures does not necessarily establish a *federal* due process violation. *See Neinast v. Bd. of Trs. of Columbus Metro. Library*, 346 F.3d 585, 597 (6th Cir. 2003) (concluding that the fact that a state actor did not follow county procedures for evicting a person from the public library "does not establish a denial of due process" because the plaintiff still had notice and an opportunity to be heard prior to the eviction). Rather, because "[n]o particular form of procedure is guaranteed by due process of

law," *McLaughlin v. Weathers*, 170 F.3d 577, 581 (6th Cir. 1999) (citing *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 610 (1974)), what matters instead for the constitutional inquiry is whether Deputy Tyler deprived the Partin Plaintiffs of their property, in satisfaction of a judgment, without adequate notice or opportunity to be heard, *see Boals v. Gray*, 775 F.2d 686, 690–91 (6th Cir. 1985).

As the district court highlighted, the Partin Plaintiffs litigated the underlying state court case to judgment. They then filed a Motion for a New Trial, which the Franklin Circuit Court denied prior to the Writ's execution. By reason of their participation in the state court proceedings, both during and after trial, the Partin Plaintiffs had sufficient notice and opportunity to be heard before Deputy Tyler's seizure of their trucks.

*Second*, even assuming the Partin Plaintiffs were constitutionally entitled to a hearing on their second post-trial motion prior to the Writ's issuance, they failed to "prove the absence of adequate state remedies." *McLaughlin*, 170 F.3d at 582 (quoting *Wagner v. Higgins*, 754 F.2d 186, 192 (6th Cir. 1985)). In general, "[i]f satisfactory state procedures are provided in a procedural due process case, then no constitutional deprivation has occurred despite the injury." *Jefferson v. Jefferson Cty. Pub. Sch. Sys.*, 360 F.3d 583, 587–88 (6th Cir. 2004) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) and *Vicory v. Walton*, 721 F.2d 1062, 1065–66 (6th Cir. 1983)). That is because "[i]n a procedural due process claim[], the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property,' is not in itself unconstitutional; what is unconstitutional is the deprivation of such interest *without due process of law*." *Zinermon*, 494 U.S. at 125 (citing *Parratt v. Taylor*, 451 U.S. 527, 537 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 330 (1986), and *Carey v. Piphus*, 435 U.S. 247, 259 (1978)).

The Partin Plaintiffs successfully sought a TRO on the same day that Deputy Tyler began executing the Writ, halting the process before it could be completed. The next day, the Franklin Circuit Court permitted them to retrieve their trucks. By all accounts, they were "rendered, in effect, whole by restoration of [their] property." *McLaughlin*, 170 F.3d at 583.

The Partin Plaintiffs acknowledge that the state court promptly dissolved the Writ and ordered their trucks returned. Nevertheless, they retort that this post-deprivation procedure was inadequate because they also suffered lost profits, mental and emotional distress, and damage to their reputation. They thus suggest that only a § 1983 action can compensate them for these harms. But the measure of damages available under § 1983 is not the benchmark for determining the adequacy of a state court remedy. *See Hudson*, 468 U.S. at 535 ("[T]hat [the plaintiff] might not be able to recover under these remedies the full amount which he might receive in a § 1983 action is not, as we have said, determinative of the adequacy of the state remedies." (citing *Parratt*, 451 U.S. at 544)). Moreover, the Partin Plaintiffs fail to discuss, much less show, why Tennessee tort law or other state remedies would not compensate them for these alleged harms. As a result, they do not carry their burden of demonstrating the inadequacy of state remedies. *See Collyer v. Darling*, 98 F.3d 211, 223 (6th Cir. 1996) (citing *Parratt*, 451 U.S. at 543).

We thus affirm the district court's grant of summary judgment to Deputy Tyler on the Partin Plaintiffs' procedural due process claim.

### 2) *The § 1983 Substantive Due Process Claim against Deputy Tyler*

In addition to their procedural due process claim, the Partin Plaintiffs allege that Deputy Tyler violated their substantive due process rights when he "wrongfully seize[d]" and "forcibly obtain[ed]" their trucks "by . . . acting on an illegal and inadequate Writ of Execution." In

addressing the merits of this contention, the district court concluded it was more appropriately analyzed under the Fourth Amendment. We agree.

To support a viable substantive due process claim against executive action, a plaintiff must ordinarily demonstrate an "abuse of power . . . [that] shocks the conscience." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). But as a result of the amorphous nature of the case law in this area, the substantive due process framework is inappropriate where another constitutional amendment encompasses the rights asserted. *See Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992). The Supreme Court has explained that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing [the] claims." *Lewis*, 523 U.S. at 842 (first alteration in original) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion)). Accordingly, when a claimant alleges that a state actor unreasonably seized her property, a court should generally apply the Fourth Amendment reasonableness standard governing searches and seizures, not the substantive due process standard of conscience-shocking state action. *See, e.g.*, *Graham v. Connor*, 490 U.S. 386, 395 (1989).

Here, an allegedly unlawful truck seizure forms the crux of the Partin Plaintiffs' § 1983 substantive due process claim. A "[s]ubstantive due process analysis is therefore inappropriate in this case" because the alleged harm is "covered by" the Fourth Amendment. *Lewis*, 523 U.S. at 843. The district court thus rightly subsumed analysis of the Partin Plaintiffs' substantive due process claims within its Fourth Amendment discussion.

Nevertheless, the Partin Plaintiffs assert for the first time in their reply brief that they can sustain a substantive due process claim separate from their allegations of wrongful seizure. In

support, they say the deputy "threatened" to arrest Christa Partin for obstruction of justice if she impeded the execution process and that he told her he would have to "bust[] the locks" on the trucks if she did not give him the keys. They argue that such statements qualify as "false threats" and "intimidation." But since they failed to present such arguments in their opening brief on appeal, they forfeited any distinct substantive due process claim. *See Osborne v. Hartford Life & Accident Ins. Co.*, 465 F.3d 296, 301 (6th Cir. 2006) ("We ordinarily do not entertain an argument first made in a reply brief." (citing *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 318 (6th Cir. 2005))).

Having dispensed with the Partin Plaintiffs' substantive due process claim, we analyze the remaining constitutional claims related to the trucks' seizure under the Fourth Amendment.

### 3) The § 1983 Fourth Amendment Unlawful Seizure Claims against Deputy Tyler

The Partin Plaintiffs assert that Deputy Tyler violated their Fourth Amendment rights because he: (i) executed a wrongfully issued writ,[2] and (ii) seized their trucks outside Franklin County. The district court rejected both of these arguments and granted summary judgment to Deputy Tyler. We agree that Deputy Tyler did not unreasonably seize the Partin Plaintiffs' trucks.

The Fourth Amendment prohibits "unreasonable searches and seizures," thus protecting citizens against government seizures of property without legal process. U.S. Const. amend. IV; *Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 61 (1992). "A 'seizure' of property . . . occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Soldal*, 506 U.S. at 61 (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). When

---

[2] Again, to the extent the Partin Plaintiffs base their Fourth Amendment claims on the propriety of clerk Anderson's actions, we reject such arguments as explained in note 1, *supra*.

assessing whether a Fourth Amendment violation has occurred, "the ultimate touchstone" of the inquiry "is 'reasonableness.'" *Johnson v. City of Memphis*, 617 F.3d 864, 868 (6th Cir. 2010) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). We therefore review whether Deputy Tyler's (a) execution of an "unlawfully" issued writ, or (b) out-of-county seizure of the trucks constituted objectively unreasonable actions.

### (a) Execution of the "Unlawful" Writ

With respect to the first asserted basis for the Partin Plaintiffs' Fourth Amendment claims—the alleged prematurely issued Writ—the parties vigorously dispute the correct interpretation of the Tennessee rules governing judgment finality and writs of execution. The Partin Plaintiffs argue that their second post-trial motion suspended the finality of the trial court judgment, and they thus contend the Writ was premature. Deputy Tyler, on the other hand, argues that the Writ was proper because the second post-trial motion lacked any such effect. The district court agreed with Deputy Tyler's interpretation of the Tennessee writ-of-execution rules, concluding on that basis that his enforcement of the Writ was reasonable. On appeal, the Partin Plaintiffs take issue with that decision, arguing for an interpretation of the Tennessee rules and procedures different than the district court accepted.

Rather than wade into Tennessee post-judgment law, we assume that Deputy Tyler executed an improperly issued writ; such invalidity does not affect the Partin Plaintiffs' constitutional rights.

Generally, an officer's erroneous seizure of property does not in itself establish a Fourth Amendment violation, especially if performed in reliance on a facially valid writ of execution or other court order. *See Coonts v. Potts*, 316 F.3d 745, 750–51 (8th Cir. 2003) (concluding that conducting a levy under a "facially-valid writ of execution" was a reasonable seizure under the

Fourth Amendment despite challenges to the writ's lawfulness); *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 536–37 (8th Cir. 1999) (a deputy's erroneous seizure of a boat and trailer while acting pursuant to a writ of execution did not support a viable Fourth Amendment claim); *cf. Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244–1251 (2012) (concluding that officers' reliance on a facially valid warrant entitled them to qualified immunity despite a claim that they lacked probable cause for the search); *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005) ("An arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest or false imprisonment made pursuant to § 1983." (citing *Baker v. McCollan*, 443 U.S. 137, 143–44 (1979))).

No reasonable jury could conclude that Deputy Tyler's actions in reliance on the Writ violated the Partin Plaintiffs' Fourth Amendment rights. As noted, the Franklin Circuit Court Clerk issued the Writ on January 23, 2015. The Writ specified a judgment amount and described the property subject to levy. Nothing about the content of the Writ suggests invalidity, nor do the Partin Plaintiffs argue that point on appeal.

Three days after the Franklin Clerk issued the Writ, Deputy Tyler collected it for enforcement. Tennessee law mandates that a sheriff must "[e]xecute and return, according to law, the process and orders of the courts of record of this state . . . with due diligence, when delivered to the sheriff for that purpose." Tenn. Code Ann. § 8-8-201(a)(1); *see also* Lawrence A. Pivnick, 2 *Tenn. Cir. Ct. Prac.* § 29:3 (2008–2009 ed.). Accordingly, Deputy Tyler began the process of executing the judgment as set forth in the Writ, and halted these efforts when the Franklin Circuit Court ordered him to do so.

The Partin Plaintiffs contend that Deputy Tyler should have investigated the lawfulness of the Writ prior to execution. But Tennessee law does not require a sheriff to conduct such an

inquiry. *See Harris v. Dobson-Tankard Co.*, 298 S.W.2d 28, 32 (Tenn. Ct. App. 1956) ("Since this writ was regular and valid upon its face, and issued by a court having jurisdiction . . . the officer's duty was to execute it, and he was not bound to inquire into the judgment on which the writ issued." (citations omitted)); *see also Kelton v. Vandervort*, 707 S.W.2d 517, 520 (Tenn. Ct. App. 1985). In sum, failing to carry out the Writ's command would have violated Deputy Tyler's statutory duty to execute, *see* Tenn. Code Ann. § 8-8-201(a)(1), and the Partin Plaintiffs fail to show that his actions in light of this duty were unreasonable.

We thus reject the Writ's alleged invalidity as a basis for sustaining a Fourth Amendment § 1983 claim against Deputy Tyler.

(b) Execution of the Writ Out-of-County

As to the Partin Plaintiffs' second asserted basis for a Fourth Amendment violation—Deputy Tyler's seizure of the trucks outside Franklin County—the Partin Plaintiffs argue that out-of-county seizures are unlawful in Tennessee and therefore unreasonable under the Fourth Amendment. Deputy Tyler, on the other hand, contends that Tennessee law does not bar him from cooperating with other counties' sheriff departments to retrieve personal property owned by Franklin County residents but located across county lines. The district court agreed with Deputy Tyler. We agree, too.

Here, Deputy Tyler seized the trucks in Coffee County after the Partins informed him that their trucks were there. Coffee County law enforcement assisted him with the task. This type of cooperation is routine in Tennessee. As the district court concluded, there is nothing remarkable or unreasonable about Deputy Tyler's actions.

The Partin Plaintiffs try to persuade us to the contrary, citing Tenn. Code Ann. § 8-8-201(5)(A), which provides that "[i]t is a sheriff's duty to: [e]xecute all writs and other process

legally issued and directed to the sheriff, within the county." But no provision in § 8-8-201 bars a sheriff from cooperating with other counties' law enforcement to seize personal property which happens to be located outside county lines. *See id.*

They also point to a district court case, *Buchanan v. Williams*, 434 F. Supp. 2d 521 (M.D. Tenn. 2006), in which the court held that a Smith County deputy's seizure of a Davidson County resident's car, parked in Davidson County, violated Tennessee law and was therefore unreasonable under the Fourth Amendment. *Id.* at 525, 531. That court relied on § 8-8-201, reasoning that if a deputy sheriff has the "duty" to execute writs "within the county," that means he or she cannot, as a matter of law, execute writs outside the county. *See id.* at 531. As discussed, however, the statute does not prohibit cooperation with an outside county's law enforcement to levy on personal property. *See generally* Tenn. Code Ann. § 8-8-201. To the extent *Buchanan* suggests that a sheriff's out-of-county seizure—regardless of the circumstances—necessarily results in a constitutional violation, we decline to follow the logic of that case.

We thus agree with the district court that the Partin Plaintiffs fail to show that Deputy Tyler's out-of-county seizures were unreasonable.

### 4) *The § 1983 Civil Conspiracy Claim against Deputy Tyler*

The Partin Plaintiffs also posit that Deputy Tyler conspired with the other Defendants to seize their property unconstitutionally. We make quick work of this claim. To prove a civil conspiracy under 42 U.S.C. § 1983, a plaintiff must show that a defendant formed a plan or objective with others to violate her constitutional or federal statutory rights. *See Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011); *Revis v. Meldrum*, 489 F.3d 273, 287 (6th Cir.

2007).  Because the Partin Plaintiffs fail to come forward with proof of any such objective on Deputy Tyler's part, they cannot sustain their civil conspiracy claim against him, either.

### 5) *The § 1983 Claims against Franklin County*

Finally, the Partin Plaintiffs lodge the same § 1983 constitutional claims against Franklin County as they do against Deputy Tyler.  We, like the district court, need not reach the merits of these contentions.  The Partin Plaintiffs fail to establish any viable constitutional claims against Deputy Tyler and therefore fail to sustain the same claims against his employer, the county.  *See Memphis, Tenn. Area Local, Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004) (noting that a cognizable § 1983 claim against a municipality requires showing that "agents of the municipality . . . violated the plaintiff's constitutional rights" (citing *City of Canton v. Harris*, 489 U.S. 378, 379 (1989))).

### B.  The § 1983 Claims against the Private Party Defendants

In addition to claiming that the County Defendants violated their Fourth and Fourteenth Amendment rights, the Partin Plaintiffs allege that Davis and the Ikard Defendants—all private parties—are liable for the same constitutional violations under 42 U.S.C. § 1983.  Davis and the Ikard Defendants, however, are not state actors under § 1983.  As a result, we affirm summary judgment in their favor.

"The Fourth and Fourteenth Amendment rights at issue [in this case] secure protection only against infringement through *state* action."  *Revis*, 489 F.3d at 289 (emphasis added) (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978)).  But under some circumstances, "the conduct of private parties may be deemed to be state action when the 'conduct allegedly causing the deprivation of a federal right may be fairly attributable to the state.'"  *Id.* (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

The "state-action analysis is a normative and fact-bound endeavor." *S.H.A.R.K. v. Metro Parks Serving Summit Cty.*, 499 F.3d 553, 564 (6th Cir. 2007) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295–96 (2001)). In general, the Sixth Circuit employs three tests to evaluate whether a private party's conduct constitutes state action: the public-function test, the state-compulsion test, and the nexus test. *Revis*, 489 F.3d at 289 (citing *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000)). Here, the nexus test, "which focuses on the extent of the relationship between the state and private actors," provides the most useful metric for evaluating Davis and the Ikard Defendants' potential liability under § 1983. *Id.* Under this test, "the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *S.H.A.R.K.*, 499 F.3d at 565 (quoting *Lansing*, 202 F.3d at 830).

### 1) The § 1983 Claims against Davis

The Partin Plaintiffs claim that Davis violated their Fourth and Fourteenth Amendment rights by "wrongfully demand[ing] an execution on a judgment while the [state] legal proceedings were stayed pending post trial issues being resolved" and by "pursu[ing] the illegal execution of a judgment that was not final."

In *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 939–42 (1982), the Supreme Court concluded that private parties qualified as "state actors" when they invoked the aid of state officials to use allegedly unconstitutional, state-created prejudgment-attachment procedures. But *Lugar* "also held that the plaintiff's *separate* claim in that case, which alleged only that the private parties had invoked the statute maliciously or without valid grounds, did not give rise to state action." *Revis*, 489 F.3d at 290 (emphasis added) (citing *Lugar*, 457 U.S. at 940).

- 17 -

Moreover, later decisions in the Sixth Circuit "expressly declined . . . to extend" *Lugar* beyond allegedly unconstitutional *pre*-judgment attachment or garnishment proceedings. *Id.* at 289–90 (citing *Hill v. Langer*, 86 F. App'x 163, 167 (6th Cir. 2004)).

In *Revis*, for example, the Sixth Circuit addressed whether a Tennessee plaintiff could bring § 1983 Fourth and Fourteenth Amendment claims against several private parties who participated in post-judgment execution proceedings. *Id.* at 288–92. According to that plaintiff, those parties maliciously employed the Tennessee execution process to levy on his home and seize his personal effects, even physically assisting law enforcement to take the property. *See id.* at 277–79, 288–90. After analyzing *Lugar* and applying the nexus test, the court concluded:

> [The plaintiff's] claim that the private-party defendants applied for the writs maliciously or without cause—such as by overstating the judgment amount owed—does not give rise to state action. Significantly, he does not challenge the constitutionality of Tennessee's execution procedures. The private-party defendants' invocation of presumptively valid state procedures therefore amounts, at most, to the sort of statutory misuse or abuse that *Lugar* specifically instructs does not give rise to state action.

*Id.* at 291.

Here, the Partin Plaintiffs claim that Davis is a state actor because "[t]he seizure was at [his] behest . . . utilizing the machinations of the state," and because he "wrongfully assert[ed] legal positions without Court order or legal justification . . . [,] caus[ing] an execution to be issued in contravention of Tennessee law." These allegations amount to "claim[s] that [Davis] applied for [the Writ] maliciously or without cause." *Revis*, 489 F.3d at 291. But as the *Revis* court explained, "simply invoking or following unchallenged state procedures, even if done in bad faith, does not render the private-party defendants state actors." *Id.* at 292; *see also* *McLaughlin*, 170 F.3d at 581 (citing *Lugar*, 457 U.S. at 940).

- 18 -

We thus conclude that Davis's invocation of unchallenged Tennessee post-judgment execution procedures—whether or not in bad faith—does not amount to state action under § 1983 as a matter of law.

### 2) *The § 1983 Claims against the Ikard Defendants*

The Partin Plaintiffs allege that the Ikard Defendants violated their Fourth and Fourteenth Amendment rights because the towing company "assisted" Deputy Tyler in a wrongful seizure. They also contend that the Ikard Defendants are state actors because they have an "ongoing relationship" with Franklin County.

A plaintiff must show more than joint activity with the state to prove that a private party working for the government is a state actor. In particular, she must demonstrate "pervasive entwinement" between the two entities surpassing that of a mere contractual relationship. *McCarthy v. Middle Tenn. Elec. Membership Corp.*, 466 F.3d 399, 412 (6th Cir. 2006) (quoting *Brentwood Acad.*, 531 U.S. at 298–302). Similarly, the Supreme Court has held that even "[a]cts of . . . private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts." *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982).

Although Franklin County and the Ikard Defendants shared a contractual relationship, no facts in the record suggest that the parties were "pervasive[ly] entwin[ed.]" *See McCarthy*, 466 F.3d at 412. During the process of executing the Writ, Deputy Tyler phoned Jason Ikard to perform a towing service. The deputy chose Jason Ikard because his company had towed seized cars for the county before, and it was the only one capable of moving tractor-trailers. Ikard then drove the Partins' trucks to a holding facility. Other than asking Ikard to drive the seized trucks, Deputy Tyler shared no information about the legal basis for the execution. As the deputy

explained, the Ikard Defendants played "no role in the seizure of the property identified in the Writ of Execution other than handling the logistics of transporting the tractor-trailers." Accordingly, their involvement in the Writ-enforcement process falls short of demonstrating the close nexus with Franklin County necessary to expose them to § 1983 liability.

We thus find the Ikard Defendants' role in the seizure insufficient to make them state actors under § 1983.

### 3) *Section 1983 Civil Conspiracy Claims against the Private Party Defendants*

The Partin Plaintiffs attempt to "reach one step further" with respect to their constitutional claims against the private parties, *Revis*, 489 F.3d at 292, asserting that Davis and the Ikard Defendants conspired with Deputy Tyler and Franklin County to violate their constitutional rights. A conspiracy between private and state actors can expose the private parties to § 1983 liability. *See Revis*, 489 F.3d at 292 (citing *Am. Postal Workers Union*, 361 F.3d at 905–06). As addressed, however, Deputy Tyler is entitled to summary judgment on the conspiracy claim because there is no genuine dispute of fact that he participated in any plan or conspiracy to violate the Partin Plaintiffs' constitutional rights. Thus, the Partin Plaintiffs' contention that there is "a shared conspiratorial objective between [Deputy Tyler] and the private-party defendants . . . necessarily fails" because of our earlier determination that Deputy Tyler "did not so conspire." *Id.*

We thus uphold the district court's grant of summary judgment in favor of Davis and the Ikard Defendants.

### III.

We AFFIRM the district court's judgment in favor of all Defendants on the Partin Plaintiffs' § 1983 claims.